POWER & BRO., LIMITED, APPELLANT, *v.* W. P. TURNER, JR., RESPONDENT.

(No. 2,539.)

(Submitted October 9, 1908.   Decided November 5, 1908.)

[97 Pac. 950.]

*Fraud—Contracts—Pleadings—Sufficiency—Causes of Action— Adoption by Reference—Evidence—Issues and Proof—Opinion Evidence—Cross-examination—Trial—Argument—Right to Open and Close—New Trial—Premature Notice—Court Records—Correction.*

Contracts—Fraud—Elements—Pleadings.
    1.  To justify a recovery on the ground of fraud or deceit in the making of a contract, the statement of facts as to how the fraud or

deceit was committed must make it appear, with reasonable certainty, (1) that the defendant made a representation or statement intending that the plaintiff should act upon it; (2) that the representation was false; (3) that the plaintiff believed the statement; •and (4) that he acted upon it and was damaged.

Fraudulent Concealment—Definition.

2. A fraudulent concealment is the intentional concealment of some fact known to the defendant which it was material for the plaintiff to know to prevent being defrauded.

Fraud—Concealment—What Constitutes.

3. The concealment of a fact which one is bound to disclose is the equivalent of an indirect representation that such fact does not exist, and differs from a direct false statement only in the mode by which it was made.

Contracts—Fraud—Pleadings—Insufficiency.

4. A counterclaim, set up in an action to recover on a contract of lease of sheep, which alleged that the sheep delivered to defendant by plaintiff were so diseased with lip and foot ulceration that they infected his sheds and lands; that plaintiff knew they were diseased and that defendant did not, but was led by plaintiff to believe they were not, and that by reason of the infection of defendant's sheds and lands he was damaged in a certain amount—was insufficient to justify a recovery upon the ground of deceit, under the rule set forth in paragraph 1 above.

Pleadings—Causes of Action—Adoption by Reference.

5. Each cause of action alleged must be complete in itself, except as to the allegations introductory or by way of inducement, which, having been once made in a preceding count, may be adopted by reference.

Fraud—Pleadings—Causes of Action—Adoption by Reference.

6. In an action by the lessor of sheep to recover on the contract of lease, a counterclaim, the purpose of which was to recover of the plaintiff the amount due defendant for the care of the sheep delivered to him and an amount agreed to be paid for extra feed to certain of the sheep under a special contract, and which adopted by reference an affirmative defense, theretofore made, alleging fraud on the part of plaintiff, was insufficient to state a cause of action on the ground of fraud, under the rule laid down in paragraph 5 above.

Same—Reliance on Misrepresentation—When not Ground of Complaint.

7. When a party who claims to have been defrauded has investigated for himself, or had the means at hand to ascertain the truth or falsity of any misrepresentation made to him, his reliance upon such misrepresentation, however false it may have been, affords no ground of complaint.

Same—Pleadings—Insufficiency.

8. The answer of defendant, attempting to allege fraud on the part of plaintiff's agent in procuring him to enter into a contract whereby defendant was to winter certain sheep for plaintiff for a stipulated sum, by a statement that the agent had delivered to him sheep so infected with lip and foot ulceration, that extraordinary losses occurred for which he (defendant) became liable under the contract, but into which he would not have entered if he had known that the sheep were infected —but which failed to allege that the agent knew or should have known of the fatal character of the disease or that the sheep were infected, or that his representations as to the cause of a certain lameness in some of the sheep were false and made with the intent to mislead, and

did mislead, defendant, or that defendant relied upon the misrepresentations so made, was insufficient.

Same—Pleadings—Insufficiency—Evidence—Inadmissibility.

9. Where the pleadings are insufficient to state a cause of action or defense on the ground of fraud, evidence tending to establish fraud should be excluded.

Contracts—Issues and Proof.

10. Where, in an action on a lease of sheep, one of the issues was whether the sheep delivered to defendant were affected with lip and foot ulcerations, evidence that some of the sheep were affected by tapeworms was inadmissible, in the absence of evidence that tapeworms were one of the symptoms, or one of the results of the disease complained of.

Same—Items Making up Total Damages—Evidence.

11. It was error to permit defendant to state, in support of his counterclaim that he had been damaged by reason of the infection of his sheds and grazing lands by the diseased sheep delivered to him under his contract of lease, the damages in the lump sum of $5,000, without first requiring him to state the particular items which made up the total amount.

Same—Writings—Parol Evidence—When Inadmissible.

12. Where no issue had been made upon the question whether a written contract of lease of sheep did not contain all the stipulations of the parties, evidence that prior to the making of it an oral agreement had been made whereby plaintiff's agent agreed that defendant should have only sound and healthy sheep, was inadmissible.

Opinion Evidence—Witnesses—Competency.

13. One who, though experienced in raising and caring for sheep, had not been shown to know the conditions prevailing at the place where sheep were kept under a contract of lease, should not have been permitted to testify that certain extraordinary losses had all resulted from a certain disease.

Same.

14. A sheep-raiser who had merely stated that his sheep had during two winters contracted a certain infectious disease and that this was his only experience with it, was not competent to give his opinion as to whether the sheds of another were infected by such disease.

Evidence—Cross-examination—Scope.

15. Where, in the examination in chief of a witness, no reference had been made to a particular subject, cross-examination on such matter was improper.

Contracts—Livestock—Leases—Duty of Lessor.

16. Where a lease of sheep bound the lessee to herd, feed, and generally care for the sheep as his own property, according to the best custom of sheep husbandry, the lessor was under no obligation to undertake the treatment of the sheep suffering from a disease, or to employ any one for that purpose.

Same—Livestock—Leases—Fraud—Duty of Lessor—Evidence—Immateriality.

17. Where, in an action to recover on a contract of lease of certain sheep, defendant's chief contention was that he had been induced through fraud to enter into the lease, in that plaintiff delivered to him diseased sheep, evidence that the lessor or his agent failed to give any attention to sheep affected was immaterial.

Trial—Practice—Burden of Proof—Argument—Right to Open and Close.
    18.   Where, at the close of plaintiff's case, it was stipulated that if
    plaintiff was entitled to judgment in an action on a contract of
    lease of sheep, it was to be for a certain amount, the defendant, re-
    lying on counterclaims for damages, had the burden of proof and
    the right to open and close the argument.

New Trial—Premature Notice—Effect.
    19.   A notice of motion for a new trial which was given ten days
    before entry of judgment was premature and therefore ineffective as
    a basis of the motion.

Courts—Correction of Records—Judgment—Entry.
    20.   A court has the power to correct its records so as to speak the
    truth; hence there was no error in an order of court directing a
    change in the date of the entry of judgment so as to show on what
    day it was actually entered.

Same—Records—Amendments *Nunc Pro Tunc*—Judgment—Entry.
    21.   Where a clerk of the district court did not enter a judgment
    until twenty days after rendition thereof, a motion for an order di-
    recting entry *nunc pro tunc* as of the date of rendition was properly
    denied, even though notice of intention to move for a new trial had
    been given with reference to the date of rendition of judgment.

Pleading—Splitting Causes of Action—Counts.
    22.   *Semble:* Where all the damages resulting from an alleged fraud
    were the result of one act of the wrongdoer, it would seem that the
    defrauded party has but one single cause of action arising out of
    this wrong; therefore, all the elements going to make up the sum
    total of the damages should be alleged in one count, and not split into
    several causes of action.

*Appeal from District Court, Lewis & Clark County; Thos. C. Bach, Judge.*

ACTION by T. C. Power & Bro. against W. P. Turner, Jr. From a judgment for defendant and from an order denying it a new trial, plaintiff appeals. Reversed and remanded.

*Messrs. Walsh & Newman, for Appellant.*

A person relying upon fraud must specifically plead the facts constituting the fraud. It is not sufficient to say that a party was guilty of fraud, or did a certain act fraudulently, but the facts constituting the fraud must be clearly and specifically set forth. The same rule applies when setting up fraud as a defense or counterclaim, as when setting up fraud as the basis of a cause of action. (*Butte Hardware Co.* v. *Knox,* 28 Mont. 111, 72 Pac. 301; *Stetson* v. *Riggs,* 37 Neb. 797, 56 N. W. 628.) Testing the answer in this case by the rule established in the cases cited, the answer does not state facts sufficient to constitute

a defense, or to sustain a judgment in favor of the defendant. (*Byard* v. *Holmes,* 34 N. J. L. 296; *Rung* v. *Brown,* 23 Neb. 817, 37 N. W. 660; *Taylor* v. *Guest,* 58 N. Y. 262; *White* v. *Smith,* 39 Kan. 752, 18 Pac. 931; *Humphrey* v. *Merriam,* 32 Minn. 197, 20 N. W. 138; *Pforzheimer* v. *Selkirk,* 71 Mich. 600, 40 N. W. 12; *Parker* v. *Armstrong,* 55 Mich. 176, 20 N. W. 892; *Daly* v. *Quick,* 99 Cal. 179, 33 Pac. 859; *Bennett* v. *Gibbons,* 55 Conn. 452, 12 Atl. 99; *Morris* v. *Morris,* 95 Ga. 535, 20 S. E. 506; *White* v. *Smith,* 39 Kan. 752, 18 Pac. 931; *Farmer* v. *Scott,* 53 Kan. 534, 36 Pac. 978; *Middleton* v. *Jerdee,* 73 Wis. 39, 40 N. W. 629; *Hemenway* v. *Keeler,* 88 Hun, 405, 34 N. Y. Supp. 808; *Pryor* v. *Foster,* 130 N. Y. 171, 29 N. E. 123; *McDonald* v. *Trafton,* 15 Me. 225; 8 Ency. of Pl. & Pr. 897; 2 Current Law, 108; *Farnsworth* v. *Duffner,* 142 U. S. 43, 12 Sup. Ct. 164, 35 L. Ed. 931.)

That a complaint does not state facts sufficient to constitute a cause of action, or that an answer does not state facts sufficient to constitute a defense or support a counterclaim, may be raised for the first time on an appeal to the supreme court. It is never waived.   (*Quirk* v. *Clark,* 7 Mont. 31, 14 Pac. 669; *Garver* v. *Lynde,* 7 Mont. 108, 14 Pac. 697; *Whiteside* v. *Lebcher,* 7 Mont. 473, 17 Pac. 548; *Raymond* v. *Wimsette,* 12 Mont. 551, 33 Am. St. Rep. 604, 31 Pac. 537; Code Civ. Proc., sec. 685.)

There is no evidence tending to show that the plaintiff, its agent or officers had any knowledge that the sheep were afflicted with or exposed to any infectious disease, or that the disease mentioned in the complaint was infectious or contagious. (Ingham on Animals, 348; *St. Louis* v. *Goolsby,* 58 Ark. 401, 24 S. W. 1071; *Clarendon* v. *McClellan,* 89 Tex. 483, 59 Am. St. Rep. 70, 34 S. W. 98, 35 S. W. 474, 31 L. R. A. 669; *Hawks* v. *Locke,* 139 Mass. 205, 52 Am. Rep. 702, 1 N. E. 543; *Patee* v. *Adams,* 37 Kan. 133, 14 Pac. 505; *Missouri Pac. Ry. Co.* v. *Finley,* 38 Kan. 550, 16 Pac. 951; *Grimes* v. *Eddy* (Mo.), 27 S. W. 479; *Wirth* v. *State,* 63 Wis. 51, 22 N. W. 860; *O'Hare* v. *Morris,* 87 Ill. App. 393; *Coyle* v. *Conway,* 35 Mo. App. 490;

*Bradford* v. *Floyd,* 80 Mo. 207; *Walker* v. *Herron,* 22 Tex. 55.) The same rule applies as in case of damage by a vicious animal; the owner is not responsible unless he knew the animal was vicious. (*Ward* v. *Danzeizen,* 111 Ill. App. 163; *Feldman* v. *Sellig,* 110 Ill. App. 130; *Fritsche* v. *Clemow,* 109 Ill. App. 355; *Gladstone* v. *Brinkhurst,* 70 N. J. L. 130, 56 Atl. 142; *Eddy* v. *Union R. Co.,* 25 R. I. 451, 105 Am. St. Rep. 897, 56 Atl. 677; *DeGray* v. *Murray,* 69 N. J. L. 458, 55 Atl. 237; *Trumble* v. *Happy,* 114 Iowa, 624, 87 N. W. 678; 2 Am. & Eng. Ency. of Law, 2d ed., 364-367.)

The plaintiff was entitled to open and close the argument to the jury. (16 Cyc. 926-932; *Royal Ins. Co.* v. *Schwing,* 87 Ky. 410, 9 S. W. 242; *Scott* v. *Wood,* 81 Cal. 398, 22 Pac. 871; Thompson on Trials, 226-229; Bailey on Onus Probandi, 603.)

Evidence of fraud in other transactions is not admissible to establish fraud in an independent transaction. The only case in which such evidence can be admitted is in case of conspiracy. (*Edward Malley Co.* v. *Button,* 77 Conn. 571, 60 Atl. 125; *Buckley* v. *Acme Food Co.,* 113 Ill. App. 210; *Edwards* v. *Warner,* 35 Conn. 517.)

*Mr. Wm. Wallace, Jr., Mr. John G. Brown,* and *Mr. R. F. Gaines,* for Respondent.

Every fact or circumstance from which a legal inference of fraud may be drawn is relevant, and the courts will allow the greatest liberality in the method of examination, the scope of the inquiry and the latitude of the direct and cross-examination of witnesses. (6 Ency. of Ev., pp. 22, 23, notes 62-64.) And this true whether the act or occurrence preceded or followed the particular act complained of. (*New York etc. Ins. Co.* v. *Armstrong,* 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997; *Bancroft* v. *Feringhi,* 54 Cal. 120; *Gardner* v. *Meeker,* 169 Ill. 40, 48 N. E. 308; *Piedmont Bank* v. *Hatcher,* 94 Va. 229, 26 S. E. 506; *Pennsylvania etc. Ins. Co.* v. *Mechanics' etc. Trust Co.,* 72 Fed. 423, 19 C. C. A. 286, 38 L. R. A. 33; *Brown* v. *Dickerson,* 2 Marv. (Del.) 119, 42 Atl. 421;

*Kingman* v. *Reinemer*, 166 Ill. 208, 46 N. E. 786; *Bloomer* v. *Gray*, 10 Ind. App. 326, 37 N. E. 819; *Cole* v. *High*, 173 Pa. 590, 34 Atl. 292; *New York etc. Ins. Co.* v. *Armstrong*, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997.)

Where fraud is relied upon to avoid a contract or written instrument, parol evidence of the contents of that instrument is admissible in evidence. (6 Ency, of Ev., p. 16; *Burns* v. *Dockray*, 156 Mass. 135, 30 N. E. 551; *Brison* v. *Brison*, 75 Cal. 525, 7 Am. St. Rep. 189, 17 Pac. 689; *Sathre* v. *Rolfs*, 31 Mont. 85, 77 Pac. 431.) The defendant had the right to open and close. (*Royal Ins. Co.* v. *Schwing*, 87 Ky. 410, 9 S. W. 242.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The complaint in this action contains four counts. In the first recovery is sought for the sum of $4,920.60, with interest, made up of moneys loaned to defendant and paid out and expended by plaintiff in his behalf, and at his request, during the years 1903 and 1904. In the second recovery is sought for the sum of $1,386.92, alleged to be the reasonable value of goods, wares and merchandise furnished to defendant at his instance and request during the same years, with interest from and after May 14, 1904. In the third count it is alleged that the plaintiff and defendant on October 1, 1900, entered into a written contract, a copy of which is attached to and made a part of the complaint as "Exhibit A," and reads, omitting formal parts as follows:

"That the said party of the first part, [T. C. Power & Bro.] does by these presents lease, grant and farm let unto the said party of the second part [W. P. Turner, Jr.] the following described sheep: 740 head of yearling wethers; 7,480 head of 2s, 3s, and 4 year old wethers; 655 head of lambs; 1,000 head of 2 year old ewes, for the purpose of running the same from the first day of October, 1903, until the first day of May, A. D. 1904, and, as a consideration therefor, the said party of the first part.

agrees to pay said second party the sum of eight cents ($.08) per head per month for the actual number of sheep returned to them on the first day of May, 1904.

"It is further understood and agreed by and between the parties of this contract that the said party of the second part covenants and agreed to and with the said party of the first part that he will in a good and husband-like manner, and according to the best custom of sheep husbandry in the neighborhood, herd, feed and generally care for said sheep as of his own property, and for that purpose will provide suitable and ample sheep sheds and shelter, and sufficient hay to feed them during winter, and will pay any and all expenses of herding and feeding the same, and also the expense of delivering them up to said party of the first part at the expiration of this lease, at Chester, Montana.

"And it is further understood and agreed between the parties hereto that at the expiration of said term, or on sooner termination of this lease, the said party of the second part will surrender and deliver to the said party of the first part the said sheep in as good condition and order as the same may be in when delivered into his possession on the first day of October, A. D. 1903, provided, however, that, should any losses occur from any cause whatsoever, they will be allowed to the maximum extent of 2 per cent on all wethers older than one year, 3 per cent on all yearling wethers, and 3 per cent on all dry ewes, without charge to said second party; provided, however, that said per cent for loss shall not be construed as allowing said second party to retain any sheep should death loss not equal per cent stated; and it is understood that said second party will exhibit the pelt of each and every sheep lost during said term of this lease.

"It is further agreed that, should said losses exceed the percentage as stated, the said second party will pay to the said first party the sum of $3.50 per head for all wethers, and $3 per head for dry ewes lost in excess of said percentage.

"And it is further agreed that if, at any time during the said term, the party of the second part fails to properly care for said sheep, and fails in season to provide sufficient hay and suitable sheds and shelter for them, then the said party of the first party may resume possession of said sheep, and for that purpose may enter upon any lands or premises wherever the same may be found, and shall have the right to use the sheds, feeding grounds and lands of the said party of the second part, and shall have the right to erect sheds or shelter, and purchase hay, if necessary, such expense to be paid by said party of the second part, and, in the event said second party or his agent shall not carefully and properly care for said sheep, then, and in that event, said party of the first part shall have the right to resume possession of said sheep, and put such person in charge as can properly handle same, the expenses thereof shall be paid by said second party."

It is alleged that the plaintiff had on its part kept and performed all the conditions of the contract to be by it kept and performed, but that the defendant had failed to return to plaintiff fourteen hundred and ninety wethers, all older than one year, after allowance had been made of two per cent under the terms of the contract, which were of the value of $6,653.52; that the defendant thereby became indebted to the plaintiff over and above the amount he was entitled to receive from the plaintiff for keeping the sheep in the sum of $2,371.54, with interest from May 1, 1904. In the fourth count plaintiff sues upon an account for goods, wares and merchandise sold and delivered to defendant by the Benton Hardware Company of the value of $79.40; the plaintiff being the owner of the account under an assignment to it by the company.

The answer of the defendant to the first, second and fourth counts admits all the allegations contained in them. In answer to the third count, while it is admitted that sheep to the number alleged were delivered to the defendant and that upon redelivery to plaintiff he failed to account for nineteen hundred and forty head, for which he had agreed to pay under the terms of the contract,

he denies that these were all wethers older than one year, and alleges that the losses by death were about equally distributed among the different classes, and that he should be charged for them accordingly. It is further alleged that he delivered to the plaintiff during the period covered by the contract pelts and wool taken from sheep lost of the value of $1,377.65, for which sum he was entitled to a credit upon the amount claimed by plaintiff. Then, in a paragraph designated as an affirmative defense and counterclaim, it is alleged:

"(1) That the plaintiff was guilty of perpetrating a fraud upon this defendant in the execution of said contract, 'Exhibit A,' to the plaintiff's complaint, in this: that the defendant had had in his custody under a former contract between 4,000 and 5,000 sheep described in the plaintiff's complaint, and they were still upon his premises at the time the aforesaid contract was entered into on or about the 1st of October, 1903; that said sheep were fat and healthy and in good condition to go through the winter; that, in addition to said sheep that were already upon his premises when said contract was made, the plaintiff added thereto about 5,000 sheep which were at the time of said contract, and had been for some time previous thereto, upon the range near Malta, in Valley county, Mont.; that said sheep last described had been prior to the making of this contract exposed to a certain disease which was infectious and often fatal, known as 'ulcerated foot and lip disease'; that one J. H. Huse, who was the agent and representative and general manager of the plaintiff company, and who had charge of all of said sheep at the time said contract was made, and with whom the defendant made said contract, knew at the time that said contract was made that these sheep had been exposed to this infectious disease, and wrongfully and fraudulently concealed said fact from this defendant.

"(2) Defendant further alleges that the plaintiff through said agent caused to be inserted in said contract the following: 'That, at the expiration of said term or sooner termination of this lease, the said party of the second part (this de-

fendant) will surrender and deliver to the said party of the first part the said sheep in as good condition and order as the same may be in when delivered in his possession on the first day of October, 1903.' Following this is the clause which allows this defendant a maximum loss of 2 per cent on all wethers older than one year, and 3 per cent on all yearling wethers and dry ewes. Defendant alleges that, when the above paragraph was inserted in this contract, said Huse, agent and representative of the plaintiff, knew that said 5,000 sheep which had been brought from Malta had been exposed to this disease, and that there was evidence of lameness in some of the sheep at that time, and that they were taking the disease. Said clause was inserted in said contract by said agent for the fraudulent purpose of making this defendant liable for whatever losses there might be from death among said sheep from said disease. The foregoing the defendant charges upon information and belief. Defendant further alleges that at the time said sheep from Valley county were delivered he noticed that some of them were lame, but there were no ulcers or soreness upon the feet or the lips of any of them, and defendant called the attention of said Huse to the fact that some of the sheep were lame, and said Huse replied that the lameness was caused by their having been trailed across a certain burned district on their way from Valley county to his premises.

"(3) Defendant further alleges that he made said contract with reference to said sheep being in a healthy condition, and that said sheep at the time he received them had the appearance of being in a healthy and good condition; that, if he had known the sheep had been exposed to said disease, he would never have received them, nor entered into such a contract.

"(4) Defendant further alleges that said sheep commenced to develop said disease shortly after he took possession of them; that it was a new disease to him, and that he did not know its nature nor as to how fatal it might be; that, as fast as a sheep would develop the disease, he would cut it out of the flock and put it in a corral and under his sheds, and give it the best

care and attention possible; that the disease gradually spread among the bands until it became so prevalent that there were very few of the sheep that did not take the disease; that he filled his corrals and his sheds with them, and gave them the best attention, feeding them hay and oats in large quantities, and did everything in his power to save as many of the sheep from dying as he possibly could; that he wrote the plaintiff about the condition of the sheep, and followed the advice of said plaintiff's agent, said Huse, in the extra treatment and care that he gave said sheep; that only a few of these sheep died previous to the 10th day of March, 1904, but that large numbers of them died between the 10th and 30th of March, and they continued dying so long as they remained in his possession, and, as defendant is informed and believes, continued to die afterward.

"(5) Defendant further alleges that nearly all of the losses by death among the sheep were caused by this disease. The loss from other causes was merely nominal.

"(6) Defendant further alleges that he had corrals and sheds enough to take care of these sheep, and gave them the best of attention, and that he had a large and excellent range upon which to pasture said sheep.

"(7) Defendant further alleges that the plaintiff is not entitled to recover anything under said contract for the loss of said sheep by reason of the fraud practiced upon him by it through its said agent; that it was impossible for him to comply with his said contract as to returning to the plaintiff of said sheep which had died; and that the loss of said sheep was by reason of the said disease, the existence of which among said sheep, and the fact that they had been exposed to it, were fraudulently concealed from this defendant by the plaintiff.

"(8) Defendant further alleges that he had no knowledge or information from which he could have acquired knowledge of the fact that said Huse knew that said sheep had been exposed to this disease until about a month after he had returned

said sheep to the plaintiff, to-wit, on or about the 23d day of May, 1904.

"(9) Defendant further alleges that he was advised that if the plaintiff, without knowledge that said sheep had been exposed to this infectious disease, acted in good faith in the making of said contract, and in the delivery of said sheep to him under the same, he would be bound by said contract to make said loss good. For this reason, he did not repudiate said contract and return said sheep to the plaintiff when he first discovered that said sheep had said disease. Defendant further alleges that he had no knowledge at the time he made said contract and took said sheep into his possession that they had been exposed to said disease."

The remaining portion of the answer sets up three separate counterclaims. The first of these, adopting by reference all the allegations contained in the affirmative defense, avers that, by reason of the foregoing fraud practiced upon the defendant, it became necessary for him to expend, and that he did expend, more than he would otherwise have expended for help to care for the sheep, the sum of $706.54; that he was compelled to feed to them hay and grain of the value of $4,820.83 more than would otherwise have been necessary; and that he suffered damage in these amounts through the fraud of plaintiff. The second count, after setting forth the numbers of different classes of sheep which defendant claims that he had actually received under the contract, varying in some particulars, not requiring notice, from the statements made in the complaint, alleges that there is due to defendant for the care of the sheep, at the price fixed in the contract and for extra feed he had given to a certain number of the ewes under a special agreement, made after the signing of the contract, the sum of $5,675.88, with interest from April 23, 1904, the date at which the sheep were redelivered to the plaintiff. The third count, without adopting the allegations of fraud contained in the separate defense, alleges that at the time the defendant entered into the contract referred to in the complaint and the sheep were delivered to him by the

plaintiff, he was the owner of certain corrals of the value of $3,500, and of grazing lands; that the sheep were so diseased with lip and foot ulceration that they infected these sheds and lands; that the plaintiff knew that the sheep were diseased, and that defendant did not, but was led by the plaintiff to believe that they were not; and that, by reason of the infection of the sheds and lands, the defendant had been damaged to the amount of $5,000. By an amendment made to the answer at the beginning of the trial, it is denied that the reasonable value of the sheep delivered to the defendant is $3.50 for wethers and $3 for ewes; and it is then alleged that they were so diseased at the time they were delivered that they were of no value whatever. Judgment is demanded for all the amounts set forth in these counterclaims. There was issue by reply.

The trial resulted in a verdict for the defendant for $3,995.26, and for costs of suit. The plaintiff has appealed from the judgment and an order denying it a new trial, and also from two special orders made after judgment, upon the settlement of the bill of exceptions, the result of which was to correct the records of the district court so as to show that judgment had been entered in the case on July 25, instead of July 5.

It is apparent that the theory upon which defendant seeks to recover damages against the plaintiff upon all of his counterclaims, except the second, is that he had been induced by the plaintiff through fraud to enter into the contract. This puts him in position of a plaintiff suing to recover damages suffered by reason of the deceit and fraud of the defendant. The question is submitted to us whether or not the facts set forth in these counterclaims are sufficient to support a judgment. No specific complaint is made as to the form of these pleadings; but, before examining the allegations on the head of fraud in order to determine their sufficiency, it may not be out of place to notice some features of them which, in our opinion, are fatal defects.

Upon the assumption that substantial allegations in one count of a pleading forming the very foundation of the cause of ac-

tion may be embodied in a following count by words of reference only, the third counterclaim contains no allegations attempting to show fraud, nor any words of reference to the preceding portions of the answer where they are found. The contract attached to the complaint is referred to. Regarding this as a sufficient averment on this head, there are no facts stated from which it can be understood wherein or how the plaintiff wronged the defendant in the making of this contract. Were the sheep to be healthy and free from any kind of disease? What is the character of the disease designated as lip and foot ulceration? Is it fatal and likely to result in additional expense and loss to one in defendant's position by having his corrals and grazing lands infected by it? Is it in fact an infectious disease? Plaintiff's agent knew that the sheep were infected by it, but what representation did he make on the subject to the defendant? Was this representation false? What concealments did he make? Did defendant believe and rely upon the representation, and was he thus induced to enter into the contract to his damage, whereas, if he had had the knowledge which he now has, he would not have entered into it? Did plaintiff intend to defraud him by inducing him to assume the obligations of the contract? There are no allegations in this count answering any of these questions. There is only the indirect statement that the disease was infectious; that plaintiff knew it; that defendant did not know it; and the statement, by way of conclusion, that plaintiff led him to believe that the sheep were not diseased. This is not enough to justify avoiding the contract and granting the relief demanded. Something more is required than mere innuendo or inference. In such case the statement of facts as to how the fraud was committed must make it appear with reasonable certainty (1) that the defendant made a representation or statement intending that the plaintiff should act upon it; (2) that the representation was false; (3) that the plaintiff believed the statement; and (4) that he acted upon it and was damaged. (*Butte Hardware Co.* v. *Knox*, 28 Mont. 111, 72 Pac. 301; *Byard* v. *Holmes*, 34

N. J. L. 296; *Runge* v. *Brown,* 23 Neb. 817, 37 N. W. 660.)     A
fraudulent concealment is the intentional concealment of some
fact known to the defendant which it is material for the plaintiff
to know to prevent being defrauded.     (*Page* v. *Parker,* 43
N. H. 363, 80 Am. Dec. 172.)     Indeed, the concealment of a fact
which one is bound to disclose is the equivalent of an indirect
representation that such fact does not exist, and differs from
a direct false statement only in the mode by which it is made.
Testing the third counterclaim by these rules, it is wholly in-
sufficient to justify a recovery upon the ground of deceit.

The second counterclaim is also insufficient because it con-
tains no independent statement of the facts constituting fraud.
It is true it refers to the affirmative defense and adopts the
allegations there made; but this violates a fundamental rule of
pleading, that each cause of action alleged must be complete
in itself, except as to allegations introductory or by way of
inducement, which, having been once made in a preceding count,
may be adopted by reference.     (*Murray* v. *City of Butte,* 35
Mont. 161, 88 Pac. 789; *McKay* v. *McDougal,* 19 Mont. 488, 48
Pac. 988; *Hefferlin* v. *Karlman,* 29 Mont. 139, 74 Pac. 201;
Bates, Pl. & Pr. P. & F. 502.)     The pertinency of these re-
marks touching the form of the pleadings, though made some-
what by way of digression, will become apparent when we
come to notice the rulings of the court upon the admissibility
of evidence under the allegations of the third counterclaim.
The purpose of the ˙second counterclaim is merely to recover
of the plaintiff the amount due defendant under the contract
for the care of the sheep delivered to him and for an amount
agreed to be paid him for extra feed to certain ewes under a
special agreement, made after the contract was entered into.
No allegations of fraud were necessary in order to aid recovery
under this count.     Just here it may be noted that under a stipu-
lation made by counsel during the trial, to which reference
is hereafter made, all controversy arising out of issues made
upon this count was eliminated.     The question, and the only
question, actually tried, was whether plaintiff was guilty of

fraud in procuring the contract, and the verdict was based upon a finding against plaintiff on this issue.

Recurring, then, to the main question, are the allegations contained in the affirmative defense, and adopted by reference as a part of the first counterclaim, sufficiently certain and specific to sustain a judgment? It will be noticed upon examination of these allegations that the clause of the contract which it is said was the result of plaintiff's fraud is the one quoted in the answer as follows: "That at the expiration of the said term or sooner termination of this lease the said party of the second part will surrender to the said party of the first part the said sheep in as good condition and order as the same may be in when delivered in his possession on the first day of October, 1903." The gist of the complaint made is that, by the insertion of this clause, the defendant was made to assume charge of the sheep, and became liable for losses which might occur from an extraordinary cause, of the existence of which the defendant had no knowledge; whereas, if its existence had been divulged to him by the agent of the plaintiff, he would not have assumed charge of them at all. In other words, the defendant was willing and purposed to enter into the contract by which he would become liable for losses resulting from ordinary causes, including diseases to which sheep are ordinarily subject, but that he did not assume losses likely to result from extraordinary and unusual causes, and would not have done so but for the fraudulent concealments and false statements by the agent of plaintiff. The contract says nothing on this subject; but, since no complaint is made of it except in the one particular, we must proceed upon the assumption that this is the gravamen of defendant's charge. This being the specific wrong done, it became necessary to allege with reasonable certainty the facts concerning it, to-wit, that at the time the contract was made the sheep had been exposed to an infectious disease; that they had contracted it or would probably do so, and that it was so fatal in character as to result, or to be likely to result, in extraordinary losses; that the plaintiff's agent then knew these

facts; that defendant was ignorant of them; that the plaintiff concealed its knowledge, and by its false statements as to their condition, made with the intent to mislead the defendant, did mislead him; and that the defendant was injured. It should also appear that the circumstances were such that the defendant had a right to rely upon the statements of plaintiff's agent or have him divulge what were the exact conditions, and that he did so, for, though the statements of plaintiff's agent were false and his concealment of his knowledge was with fraudulent intent, yet the defendant would not therefore have ground to complain, if the circumstances were such that he ought to have known the conditions, and that, if he entered into the contract, he would incur liability for extra losses; for, "when it appears that a party who claims to have been deceived to his prejudice has investigated for himself, or that the means were at hand to ascertain the truth or falsity of any representations made to him, his reliance upon such representations, however false they may have been, affords no ground of complaint." (*Grinrod* v. *Anglo-American Bond Co.,* 34 Mont. 169, 85 Pac. 891.)

Reduced to a brief statement, the answer alleges that five thousand of the sheep delivered to defendant had been exposed to an infectious and often fatal disease; that it was known as "ulcerated foot and lip disease"; that Huse, the agent of plaintiff, knew of the exposure, and concealed this fact; that, knowing this fact, he incorporated the covenant in the contract rendering defendant liable for losses which might be caused by the disease; that, defendant having noticed that some of the sheep were lame and having called attention to it, Huse told him that the lameness was due to travel over burned lands; that the contract had been made on the part of the defendant with reference to healthy sheep; that thereafter the disease spread through the herd and became prevalent; that nearly all losses were the result of this disease; that he had no knowledge or information from which he could have gained knowledge that Huse knew of the exposure of the sheep; and that defendant

was advised that, if the plaintiff had acted in good faith in delivering the sheep, without knowledge of their exposure, he, defendant, would be liable for losses resulting from the disease. These allegations are wholly insufficient. It is not alleged that Huse knew anything of the fatal character of the disease, or from his experience, or any other reason should have known of it, and that the sheep had been infected by it, nor that his representations as to the cause of the lameness observed by defendant were false and made with intent to mislead and did mislead the defendant, nor that defendant relied upon the misrepresentations so made. It does not appear but that the defendant had equal opportunity with plaintiff to know exactly what the conditions were. Evidently, the parties to the contract had in mind at the time it was made the probability of losses during the winter months at least from ordinary causes, as well as other causes, else there would have been inserted an exception in this regard. Since the contract contains no such exception, the liability assumed under it may not be avoided by allegations so vague and indefinite that give room only for inference of wrongdoing on the part of the plaintiff. Relief can be had only upon a statement of probative facts coming substantially within the rule laid down in the cases heretofore cited.

Contention is made that the court erred in not directing a verdict for plaintiff at the close of the evidence. Since the cause must be remanded for a new trial, we shall refrain from discussing this feature of the case or express any opinion thereon. While, for present purposes, it may be conceded that the evidence on behalf of defendant did not warrant a submission of the case to the jury, upon another trial it may be supplemented in substantial particulars, in which event any opinion expressed by this court at this time would be of no value.

Error is assigned upon many of the rulings of the court upon the admission and exclusion of evidence, and upon instructions given and refused. Error is also assigned upon the action of the court in permitting the defendant to open and close the argument to the jury. Many of the questions arising upon the

rulings of the court on the evidence are so destitute of merit as not to require special notice; while nearly all the rest have been sufficiently covered by what we have already said. In most cases the objection went to the competency of the evidence under the pleadings, tending to establish fraud. Since we have shown that the allegations on this subject were insufficient, the objections under this head should have been sustained. This is particularly true of all objections made to such evidence under the third count in the answer. Special notice will be made of some of these rulings which are not disposed of by this general statement.

Defendant was permitted to introduce evidence showing that some of the sheep were affected by tapeworms before the delivery was made to him. This ruling was prejudicial error. There was no issue in the pleadings as to diseases generally, nor as to the health of the sheep as affected by tapeworms. The issue sought to be made and tried was as to whether the sheep were affected with lip and foot ulceration; whether this is an infectious and fatal disease; and whether plaintiff fraudulently misrepresented the facts in this connection. It was not shown that tapeworms are one of the symptoms of this disease or one of its results. The evidence went to an inquiry entirely without the issues.

As to the amount of damage suffered by defendant by reason of the infection of his grazing lands and sheds, the defendant, after stating that another herd of sheep which he had wintered during 1904 and 1905 had caught the infection, and that he could not thereafter get sheep to winter, was permitted to state that he had suffered damage to the amount of $5,000. He had not theretofore stated any of the particular items going to make up this amount. The ruling was erroneous. The witness should have been required to state the particulars wherein he had been damaged, leaving it to the jury to draw its conclusion as to the amount from the basis of calculation thus furnished. While the witness might, after stating that he had been damaged and after giving the particular items, have been permitted to

state the sum total, the statement by him of his conclusion as to the lump sum furnished no basis for calculation by the jury. A verdict based upon such evidence is based upon the conclusion of the witness, and not that of the jury. (*Dougherty* v. *Stewart,* 43 Iowa, 648; *Smith* v. *Eubanks & Hill,* 72 Ga. 280; 13 Cyc. 211.)

Evidence was admitted of the details of a conversation between the defendant and Huse, plaintiff's agent, during the month of September preceding the date of the contract, at which a preliminary arrangement was made about wintering the sheep in controversy. The defendant testified that at that time the agreement was made that he should have sound, healthy sheep. This was objected to on the ground that it tended to vary the terms of the written contract. There was no issue in the case upon the question whether the contract did not contain all the stipulations of the parties, and apparently the evidence had no pertinency to any of the issues tried; nor is it pointed out in respondent's brief that it was competent for any other purpose. It should have been excluded. Whether, under issues properly made in the pleadings, it would be competent upon the question of fraud, we do not decide.

The witness Hoffman was permitted, over objection of the plaintiff, to express his opinion as to the cause of the extraordinary loss in the herd of sheep in charge of the defendant during the winter. It did not appear from his previous examination what knowledge he had of the conditions which existed at defendant's place; but it did appear that he had had experience in raising and caring for sheep. While it may have been competent for him to state that the disease was fatal and naturally resulted in loss by death, in the absence of knowledge of other conditions prevalent there—such as want of proper care and attention on the part of the defendant—he should not have been permitted to state that the losses all resulted from the disease, which he in effect did.

Witness Whitmore, after stating that his sheep had contracted lip and foot ulceration in the winter of 1902 and 1903, and

that this was his first experience with the disease, was asked to state his opinion as to whether defendant's sheds were infected by it. His previous examination showed neither knowledge gained by investigation, nor experience in treating the disease, sufficient to enable him to express an opinion on this subject.

Huse, the agent of plaintiff, was asked on cross-examination what effort he had made personally, after the disease became prevalent in the herd, to get the state veterinarian or any of his assistants to go to defendant's place to make an investigation. The objection was made to this that it was not proper cross-examination. In his original examination no reference had been made to this subject. The objection should have been sustained on that ground. Furthermore, if the contract was valid and binding upon the defendant, neither Huse nor the plaintiff was under any obligation to undertake treatment of the disease, or to employ any one for that purpose. If defendant had suffered damage by reason of plaintiff's fraud, it was immaterial whether Huse or plaintiff failed to give attention to the sheep or to expend any effort in that behalf.

Objection was made to the giving of many paragraphs of the charge, on the ground that there was no evidence calling for a submission to the jury of the questions of fact with reference to which they were given. This is true as to all of those dealing with the law of fraud. Some of them are fundamentally erroneous, and should not have been given. Likewise, some of those requested by plaintiff and refused, embodied correct principles of law, and some of them were not covered by the charge. These should have been given. We shall not undertake to give special notice to any of them, deeming what we have already said sufficient to guide the district court on another trial when the issues are properly made up.

There is no merit in the contention that counsel for the plaintiff should have been allowed to open and close the argument to the jury. Section 6746, Revised Codes, provides that "when the jury has been charged, unless the case is submitted to

the jury on either side, or on both sides, without argument, the party upon whom rests the burden of proof must commence and may conclude the argument.'' The situation assumed by the parties in this case was this: At the close of the evidence offered by plaintiff in support of the third count of the complaint— the only one upon which defendant tendered an issue requiring proof on the part of the plaintiff—it was stipulated by counsel that, if plaintiff was entitled to have judgment for any amount, it should be for $6,414.22, the balance shown in an itemized statement of charges against defendant upon all the causes of action stated in the complaint, and credits to which defendant was entitled on account of the care of the sheep. In the absence of any evidence on the part of the defendant in support of his counterclaims for damages for plaintiff's fraud, the result would have been a judgment in plaintiff's favor for the amount stipulated. The burden of proof was therefore upon the defendant, and he had the right to open and close the argument.

So far we have considered questions presented by a bill of exceptions which was made a part of the record at the close of the trial. The judgment was actually entered in the case on July 25, 1907. The notice of intention to move for a new trial was given on July 15. Section 6796 of the Revised Codes declares that the notice of intention to move for a new trial must be given within ten days after notice of the entry of judgment. The giving of the notice in this case was therefore premature, and was not effective as the basis of the motion. The order denying the motion for a new trial must therefore be affirmed.

We do not think it necessary to discuss at length the questions presented by the appeals from the two special orders made by the court after final judgment had been entered. The result of one of them was a change in the record of the case so as to make it speak the truth as to the date of the entry of judgment. That a court has this power over its records cannot be questioned. (*Territory* v. *Clayton,* 8 Mont. 1, 19 Pac. 293; *Kendall* v. *O'Neal,* 16 Mont. 303, 40 Pac. 599; *Insurance*

*Co.* v. *Boon,* 95 U. S. 117, 24 L. Ed. 395; 17 Ency. Pl. & Pr. 909-911.)

The other special order was the denial of a motion for an order directing the clerk to enter judgment *nunc pro tunc* as of the date of July 5. We find no error in the court's action in the premises. The judgment was actually entered on July 25, because the clerk was behind in the work of his office, and could not enter it sooner. The fact that the notice of intention was given before its actual entry furnished no reason to order the entry as of an earlier date. There is no merit in these appeals.

Attention may be called to another feature of defendant's answer, though no reference is made to it in appellant's brief. If the defendant suffered damage by reason of plaintiff's fraud, then it would seem that he has but a single cause of action arising out of this wrong. All of the damage suffered was the direct result of plaintiff's one act. Therefore all of the elements going to make up the sum total of the damages sought to be recovered, should have been alleged in a single count. Essentially the same condition is presented here as was found in the complaint in *Murray* v. *City of Butte, supra,* wherein it was pointed out that plaintiff had split his demand and attempted to state two causes of action, whereas he had but one. Whether a complaint in this form, a statement of facts being sufficient in each count, would support a judgment for all the demands for damages or for any of them, we do not decide.

The judgment is reversed, and the cause is remanded to the district court for a new trial.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH. concur.