RAAS, RESPONDENT, v. SHARP ET AL., APPELLANTS.

(No. 3,196.)

(Submitted November 30, 1912.   Decided December 12, 1912.)

[128 Pac. 594.]

*Measure of Damages—Destruction of Crops—Evidence—Insufficiency—Verdict—Conjecture and Speculation—Reversal.*

Measure of Damages—Destruction of Crops—Rule—Insufficient Evidence.
1.   The measure of damages for the destruction of plaintiff's grain while in the stack, through the alleged negligence of defendants, was the net loss, *i. e.*, the market value, less cost of production, harvesting, threshing and marketing; therefore a judgment in favor of plaintiff was not warranted by the evidence where neither the location of the market nor the cost of delivery of the grain or the expense of threshing was shown.

Verdict—Conjecture and Speculation—Reversal of Judgment.
2.   To justify a jury to render a verdict in an action for damages, competent evidence of all facts necessary to a recovery, upon which they can base a reasonably reliable conclusion, must be produced; a verdict founded upon facts not before them in the evidence or mere conjecture cannot stand.

*Appeal from District Court, Chouteau County; John W. Tattan, Judge.*

ACTION by John Raas against U. S. G. Sharp and Fred. Runyan.   Judgment in favor of plaintiff, and defendants appeal from it and an order denying them a new trial.   Reversed and remanded.

*Messrs. Stranahan & Stranahan,* for Appellants, submitted a brief; *Mr. F. E. Stranahan* argued the cause orally.

*Mr. R. E. O'Keefe* submitted a brief in behalf of Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to recover damages for the destruction of certain grain while in the stack.   The plaintiff alleges that during the fall of 1909 he had three stacks of oats and one stack of barley; that he employed the defendants, who owned and operated a steam threshing outfit, to thresh his grain; that by reason of certain negligent acts, which are enumerated, sparks

from the defendants' engine set fire to the grain, with the result that it was destroyed, to the plaintiff's damage in the sum of $573. The defendants answered; admitted the employment; denied any negligence on their part, and pleaded contributory negligence on the part of plaintiff as a proximate cause of the injury. The trial of the cause resulted in a judgment in favor of plaintiff, and from that judgment and an order denying them a new trial defendants appealed. The verdict and judgment are attacked on the ground that the evidence is insufficient to sustain either, and counsel for appellants submit two contentions: (1) That it appears from the evidence that the injury to plaintiff's property resulted from the negligence of one George Marshall, who was plaintiff's agent and for whose acts the plaintiff is responsible; and (2) that the plaintiff failed to prove damages.

1. The evidence touching the relationship of Marshall and the plaintiff is too meager to enable us to determine whether or not Marshall was the plaintiff's agent in directing the defendants to proceed with the threshing after they had indicated their unwillingness to assume the risk of destroying plaintiff's property arising from the poor quality of wood furnished by the plaintiff for their engine and the high wind prevailing at the time. There is evidence to the effect that Marshall exercised supervision of all the work connected with the threshing; that he employed men on behalf of the plaintiff for the purpose of assisting in the work, and gave directions to these men where to work and what to do, and further, that he dictated to these defendants the plan to be followed in the work of threshing the grain. The record fails to disclose whether Marshall had been given any actual authority, whether plaintiff ever paid the men whom he employed or repudiated Marshall's acts. It does appear that Marshall was plaintiff's employee and that no one else assumed to exercise any authority over these defendants or the other men who assisted in the work on plaintiff's behalf. The plaintiff himself was absent at the time this work was done. He testified: "I think the second day after I got through cutting and shocking that grain I left here. I left instructions with my

wife as to the threshing of that grain. I instructed her to employ someone to thresh the grain for me, and then I went east.'' Mrs. Raas testified that in a conversation with the defendant Runyan over the telephone, she arranged with defendants to do the threshing and thereafter sent Marshall to ascertain the exact date when defendants would be present. So far as disclosed by this record, Mrs. Raas took no further part whatever. This meager record omits facts necessary to answer several important questions which must be answered before appellant's first contention can be made effective, and since this cause must be remanded for a new trial, some of those questions are suggested: If Marshall had ostensible authority, under section 5432, Revised Codes, whose intentional or negligent acts operated to confer such authority? If Mrs. Raas was plaintiff's agent, had she authority to delegate her powers under section 5456, Revised Codes, and if she had such authority, did she exercise it?

2. Plaintiff and defendant Runyan each estimated the amount [1] of grain destroyed. Plaintiff testified as to the market value of the grain but failed to indicate where the market was or what it would have cost to deliver the grain. Defendant Runyan testified as to the market price of grain at Sandy, but there is not anything in the evidence to indicate the distance of this market from plaintiff's premises or the cost of marketing the grain. Even the expense of threshing appears only by the barest inference, if indeed at all.

The rule for determining the measure of damages in a case of this character is well settled. It is founded in reason and is very well expressed by the supreme court of Washington in *Shotwell* v. *Dodge,* 8 Wash. 337, 36 Pac. 254, in speaking in a case similar to the one now before us, as follows: ''The evidence merely showed that hops were worth from thirteen to twenty-two cents a pound in 1892, and the case was left to the jury upon the inference that the gross amount of hops at the price of hops in that year would have been the actual loss. But such is not the measure of damages in such cases. The net loss is all that can be recovered, *viz.*: the market value of the crop alleged to be lost, over the cost of producing, harvesting and marketing.''

In *Carron* v. *Wood,* 10 Mont. 500, 26 Pac. 388, this precise question was not involved, and could not be, for the court says: "Evidence was introduced not only as to the value of such crops as plaintiff had devoted his land to, but also as to the expense of planting, raising, harvesting and marketing such crops." However, this recital is taken to declare the correct rule in the later case of *Hopkins* v. *Butte & Mont. Com. Co.,* 16 Mont. 356, 40 Pac. 865, where it is said: "It is also contended that the court erred in allowing certain testimony as to the measure of damages. We think, however, that the case was tried upon the lines laid down in the case of *Carron* v. *Wood,* 10 Mont. 500, 26 Pac. 388. The value of the crops was shown, and also the expense of maturing them, and of reaping and threshing, and moving to market." In *Carron* v. *Wood* there is suggested a different method for reaching the same result, but the rule contained in that suggestion was distinctly disapproved in *Power & Bro., Ltd.,* v. *Turner,* 37 Mont. 521, 97 Pac. 950. The rule first stated above merely contemplates the ascertainment of the net value of the property, as distinguished from its gross value, and that rule was enforced in *Brunell* v. *Cook,* 13 Mont. 497, 34 Pac. 1015, and in *Haggerty Bros.* v. *Lash & Shaugnessy,* 34 Mont. 517, 87 Pac. 907.

It is elementary that "competent evidence must be produced of all facts necessary to a recovery upon which the jury can base [2] a reasonably reliable conclusion; nothing can be left to mere conjecture." (*Watson* v. *Colusa-Parrot Co.,* 31 Mont. 513, 79 Pac. 14.) The plaintiff failed to show the net value of his grain which was destroyed, and in this he failed to show the amount of his damages. The verdict must have been the result of calculations made by the jurors based upon facts which were not before them in the evidence or else it is not founded upon facts at all, and either conclusion is fatal to the judgment.

The judgment and order are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.