No. 19,216.

J. L. Smith *v.* Jean H. Eichheim, et al.

(363 P. [2d] 185)

Decided July 3, 1961.

Messrs. Clayton and Gilbert, Mr. David B. Emmert, for plaintiff in error.

Mr. John W. O'Hagan, Mr. Karl R. Ahlborn, for defendants in error.

*In Department.*

Opinion by Mr. Justice Frantz.

CONSOLIDATED actions are before us on one writ of error. By separate actions Eichheim and Barnes sued Smith for damages resulting to their wheat crops from a fire alleged to have been caused by Smith in his operation of harvesting equipment. At the time, Smith was harvesting wheat for Eichheim, and the fire which started in Eichheim's field spread to the adjacent field owned by Barnes.

By amendments at various stages of the proceedings, the claim of Eichheim finally was shapen into one based upon *ex contractu* and *ex delicto* liabilities. Barnes' suit was in tort only. In its findings and judgment the trial court decided in favor of Eichheim on both theories of liability. Judgment was entered in his behalf in the sum of $10,375.62 plus interest of $518.78. Barnes was successful in his tort claim, obtaining a judgment in the sum of $2,548.53 plus interest of $127.43. These judgments are the subject of attack by this writ of error.

There was some evidence that the tail pipe on the truck operated as part of the harvesting equipment extended only an inch or so from the muffler carried underneath the truck; that standard equipment called for a tail pipe 35 to 40 inches long; that the stubble left after the grain heads were cut off was approximately 18 inches in height; and that the truck, bearing a great weight, sank some two or three inches into the turf, thus placing the muffler and the exhaust in contact with the stubble as the truck proceeded across the field.

It was also shown that a muffler with such a short tail pipe, attached to a 1946 truck carrying in excess of 10,000 pounds and traveling in second gear at approximately ten miles per hour, would emit heated material which could ignite the dry stubble.

The undisputed evidence shows that Smith and his servants were in sole possession of the field at the time the fire started, and that the truck described had just passed over the area in which the fire originated.

In an attempt to establish value of the matured crop

of wheat, Eichheim testified as to what he had received in the market at Hutchinson, Kansas, for other wheat. He testified that the "average price" which he had received in 1958, the year of the fire, was $1.75 net to him. Asked to give the market value of wheat on July 19, 1958, the date his wheat burned, he stated, "I don't know." Again asked, " * * * what the value of your wheat was on the day of the fire?" he responded, "I wasn't interested."

Because of an additional expense which he had to bear, Barnes realized only $1.65 per bushel for his wheat at the Hutchinson market. His testimony was based upon what he had received for wheat in 1958; however, it did not relate to the date of the fire. He did inform the court that the market value at Nunn, Colorado, the market nearest Eichheim and Barnes, was $1.50 a bushel on the date of the fire.

Five reasons for reversal are advanced by Smith. Our disposition of two makes unnecessary the consideration of the others.

■ The measure of Smith's duty was ordinary care which must necessarily be commensurate with the nature of the harvesting operation under the circumstances existing at the time of his engagement in the work. In other words, his obligation was that of exercising ordinary care in view of the conditions confronting him to prevent injury to the others' properties. *Holman v. Boston Land, Etc., Co.,* 20 Colo. 7, 36 Pac. 797.

. The trial court had presented to it circumstances from which it could properly deduce failure on the part of Smith to exercise ordinary care, which failure proximately caused the fire which resulted in the destruction of the crops of Eichheim and Barnes. We, therefore, sustain the trial court's determination of Smith's liability.

There is no aspect of law in which the proliferating process of evolving rules of damages is greater than that relating to the injury or destruction of crops. This is due in great measure to the difficulty in devising satis-

factory and fair rules, and the difficulty has caused the sprouting of numerous methods of ascertaining damages, not only among the various states but frequently by varying declarations of appellate courts within one state. See 175 A.L.R. 159. To some extent the reviewing courts of this state have experimented with measures of damages and have created inconsistencies and inaccuracies concerning such damages.

A definite thread of thought, however, pervades most of the decisions, and that is that such damages to crops must have relation to time and place. Whatever the value, it must be fixed at the time and place of the loss. *Hoover v. Shott,* 68 Colo. 385, 189 Pac. 848; *Roberts v. Lehl,* 27 Colo. App. 351, 149 Pac. 851. Two cases particularly point out that value at the time of the injury or destruction is of utmost importance. *North Sterling Dist. v. Dickman,* 59 Colo. 169, 149 Pac. 97, Ann. Cas. 1916 D 973; *Colo. Consolidated L. & W. Co. v. Hartman,* 5 Colo. App. 150, 38 Pac. 62.

We are dealing with a matured crop, and the measure of damages for injury to or destruction of such a crop is the value at the time and place of its injury or destruction, and this value is usually proved by showing the market value less the necessary cost of harvesting, threshing, and transporting the same to market. *Pulliam v. Miller,* 108 Nebr. 442, 187 N.W. 925.

The nearest market to Eichheim and Barnes was Nunn, Colorado. On the day in question and at the nearest market, the net value of their wheat was $1.50 per bushel. In these circumstances we hold that the applicable rule is stated in *Quint v. Dimond,* 147 Calif. 707; 82 Pac. 310, in which it was held proper for the owner of destroyed crops to prove the market value thereof in the nearest market at the time of their destruction. See *Raas v. Sharp,* 46 Mont. 474, 128 Pac. 594.

The judgment so far as it fixes the liability of Smith is affirmed, and the cause is remanded to the trial court for the purpose of making computation of damages based

upon the market value of the crops involved at Nunn, Colorado, and thereupon to enter judgment in favor of Eichheim and Barnes, respectively, based upon such computation.

MR. CHIEF JUSTICE HALL and MR. JUSTICE MCWILLIAMS concur.