[Ala. Gold Life Ins. Co. v. Johnston.]

# Alabama Gold Life Insurance Co. *v.* Johnston.

*Action on Policy of Life Insurance.*

1. *Insurance; warranty and representations distinguished.*—In a contract of insurance, a warranty is part and parcel of the contract itself, is in the nature of a condition precedent, and, whether material to the risk or not, must be strictly complied with, or literally fulfilled, before the assured can recover on the policy; while a representation, not being of the essence of the contract, but relating to something collateral or preliminary, and in the nature of an inducement to it, though false, does not avoid the policy, unless it relates to a fact actually material, or clearly intended to be made material by the agreement of the parties.

2. *Same.*—The mere fact that a statement is referred to, or even inserted in the policy itself, is not now considered conclusive of its nature as a warranty; but whether it is to be construed as a warranty, or as a representation merely, depends rather on the form of the expression, the apparent purpose of its insertion, and its conviction with other parts of the application and policy, construed together as one entire contract.

3. *General rules of construction.*—Among the settled rules for the construction of policies of insurance are these: (1) that all the conditions and obligations of the contract will be construed liberally in favor of the assured, and strictly against the insurer, (2) that the clearest and most unequivocal language is necessary to create a warranty, and all statements of doubtful meaning will be construed as representations merely; (3) that even though a warranty in name or form be declared by the terms of the contract, its effect may be modified by other parts of the policy, or of the application, including the questions and answers, so that answers to questions not material to the risk will be construed as warranting only their honesty and good faith.

4. *Case at bar.*—In this case, the contract containing inconsistent expressions, one part tending to show an intention to make the answer warranties, and another treating them as representations merely, the court holds (1) that the answers are not absolute warranties, but are in the nature of representations, or, if warranties, only of an honest belief of their truth; (2) that any untrue statement or suppression of fact material to the risk will vitiate the policy, and thus bar a recovery, whether intentional or within the knowledge of the party or not; (3) that such statement of an immaterial fact, though untrue, will not avoid the policy, unless the party knew it was false, or was negligently ignorant; and (4) that the inquiries as to the symptoms of disease were not intended to be absolutely material, unless they had existed in such appreciable form as would affect soundness of health, or have a tendency to shorten life.

APPEAL from the Circuit Court of Mobile.

Tried before Hon. W. E. CLARKE.

This action was brought against the appellant, a domestic corporation, on 31st October, 1884, by William F. Johnston,

administrator of the estate of Dora E. Connor, and guardian of William T. and Walter M. Connor, minor children of William D. Connor, deceased: and was founded on a policy of life insurance which the said W. D. Connor effected with appellant corporation for the benefit of said Dora E. and her children on 3d December, 1872. The complaint avers the fact of insurance, and the death of the assured, which occurred in December, 1883, and that satisfactory proof thereof was duly transmitted to the defendant and payment of the amount of the policy demanded and refused.

On the trial, as shown by the record, the defendant pleaded the general issue, and a number of special pleas based upon the alleged untruthfulness of certain answers given by the assured to questions contained in the printed "application," or proposal for insurance, submitted by said Connor prior to the issuance to him of the policy in question. This application, which was introduced in evidence contained under the heading or caption of "Particulars required from persons proposing to effect Insurance on Lives in the Company, and forming the basis of the contract," a list of questions designed to elicit information from the applicant for insurance touching his past and present physical condition. Among the questions in this application or proposal pertinent to this report were the following: "(10) Is the party subject or predisposed to dyspepsia, ·dysentery, diarrhœa, *or any other disease or bodily infirmity?*" To this question the said Connor answered "No." "(11) Has the party had, or been affected, *since childhood*, with any of the following complaints," enumerating various ailments or diseases, among which was the following: "*Fits or convulsions?*" To this question the said Connor responded in the negative. The application also exhibits the following question and answer: "(32) Is the party aware that any untrue or fraudulent answers to the above querries, or any suppression of the facts in regard to the party's health will vitiate the policy, and forfeit all payment made thereon?" "Yes." In addition to the questions and answers, the said application contained a "declaration" of the beneficiaries in the following language: "We do hereby declare, that the age of W. D. Connor, the above named, does not now exceed 33 years; that he is. now in good health, and does ordinarily enjoy good health, and that in the above proposal we have not withheld any material circumstance, or information touching the past or present state of health or habits of life of W. D. Connor, with which the officers and Directors of the Alabama Gold Life Insurance Company should be made acquainted."

The defendant filed special pleas in reference to each of the foregoing answers averring (except the last), substantially, that

[Ala. Gold Life Ins. Co. v. Johnston.]

the assured " had fits " or convulsions when he was of the age
of seventeen or eighteen years;" and that said answers, being
severally untrue, constituted breaches of the contract of insur-
ance as being violative of the following stipulation embodied
in the policy:   "*And it is also understood and agreed, by the
within assured, to be the true intent and meaning hereof, that
if the declaration, or any part thereof, made by or for the said
insured, in the application for this policy, and bearing date
the third day of December, 1872, and upon the faith of which
this policy is made, shall be found, in any respect untrue, then,
and in such case, this policy shall be null and void.*"   The de-
fendant adduced medical and other testimony which tended to
establish the allegations of the special pleas that the said Con-
nor was, (from his eighteenth to his twentieth year) subject to
a disorder styled by the various witnesses as "Fits," "Con-
vulsions," "Spasms," etc.   A number of plaintiffs' witnesses,
however, testified that the assured had not been so affected
"since he was grown;" and their evidence tended to fix the
period during which said Connor was subject to said com-
plaint, somewhat earlier than that indicated by the defendant's
testimony.   There was no recurrence of the Fits or Convul-
sions after said Connor was "grown;" and it was shown that
his general health was unusually good until his death, in De-
cember, 1883, of an abscess resulting from typhoid fever.

This being the substance of the evidence, the court, as shown
by the Bill of Exceptions, charged the jury, amongst other
things, " that the insurance contract, as evidenced by the ap-
plication and policy, did not amount to a warranty of the
truth of the answers made by the assured to the questions in
the application, but were merely representations," to which
charge the defendant duly excepted.   The court further
charged the jury that "it was a question for them to decide,
whether the fits and convulsions, which the assured had since
childhood were material to the risk, and whether or not the de-
fendant would have issued the policy if the assured had an-
swered that he had had fits and convulsions, as the proof indi-
cated."   To this charge the defendant also excepted.   The
court also charged the jury, in connection with the portion of
the general charge above set out, that "although the statements
made in the application were not, by the contract of insurance
warranted to be true, still if the assured, at the time that the
application was made, answered any question, as to any matter
material to the risk, knowing that such answer was false, or
having the means of ascertaining that it was false, the policy
would be void, and no recovery could be had by the plaintiff.
That the fact that, any questions were asked of the assured in
the application made the matter inquired about material to the

[Ala. Gold Life Ins. Co. v. Johnston.]

risk, and that if the jury found that a false answer had been given to any question asked in the application, which was at the time known to the assured to be false, or concerning which the assured had the means of . ascertaining that it was false, the plaintiff could not recover. That if the deceased knew he had fits or convulsions after he was fourteen years of age, or had knowledge of facts that, if .followed up, would have brought him to that knowledge, the plaintiff could not recover."

The defendant requested the following charge in writing, and excepted to its refusal by the court: "If the jury believe the evidence, they must find for the defendant." The charges above noted to which exceptions were reserved by the defendant, and the refusal to give the general charge, are here assigned as error.

OVERALL & BESTOR, for appellant.

J. L. & G. L. SMITH, and WM. F. JOHNSTON, *contra.*

SOMERVILLE, J.—The question of most importance, which is raised by the rulings of the court in this case, is, whether the answers made by the assured to the questions contained in the application for insurance are to be construed as absolute *warranties*, or in the nature of mere *representations.*

The distinction between a warranty and a representation in insurance is frequently a question of difficulty, especially in the light of more recent decisions, which recognize the subject as one of growing importance in its relations particularly to life insurance. As a general rule it has been laid down, that a warranty must be a part and parcel of the contract of insurance, so as to appear, as it were, upon the face of the policy itself, and is in the nature of a condition precedent. It may be affirmative of some fact, or only promissory. It must be strictly complied with, or literally fulfilled, before the assured is entitled to recover on the policy. It need not be material to the risk, for whether material or not, its falsity or untruth will bar the assured of any recovery on the contract, because the warranty itself is an implied stipulation that the thing warranted is material. It further differs from a representation in creating on the part of the assured an absolute liability whether made in good faith or not.

A representation is not, strictly speaking, a part of the contract of insurance, or of the essence of it, but rather something collateral or preliminary, and in the nature of an inducement to it. A false representation, unlike a false warranty, will not operate to vitiate the contract, or avoid the policy, unless it relates to a fact actually material, or clearly intended to be

made material by the agreement of the parties.   It is sufficient if representations be substantially true.   They need not be strictly, or literally so.   A misrepresentation renders the policy void on the ground of *fraud;* while a non-compliance with a warranty operates as an express *breach* of the contract.

The mere fact that a statement is referred to, or even inserted in the policy itself, so as to appear on its face, is not alone now considered as conclusive of its nature as a warranty, although it was formerly considered otherwise.   Whether such statement, shall be construed as a warranty or a representation depends rather upon the form of expression used, the apparent purpose of the insertion, and its connection or relation to other parts of the application and policy, construed together as a whole, where legally these papers constitute one entire contract, as they most frequently do.   Bliss on Insurance, § 43 *et seq., Price v. Phœnix Mut. Ins. Co.,* (17 Minn. 497), S. C. 10 Amer. Rep.

In construing contracts of insurance there are some settled rules of construction, bearing on this subject, which we may briefly formulate as follows :

(1).  The courts being strongly inclined against forfeitures, will construe all the conditions of the contract, and the obligations imposed, liberally in favor of the assured, and strictly against the insurer.

(2).  It requires the clearest and most unequivocal language to create a warranty, and every statement or engagement of the assured will be construed to be a representation and not a warranty, if it be at all doubtful in meaning, or the contract contains contradictory provisions relating to the subject, or be otherwise reasonably susceptible of such construction.   The court, in other words, will lean against that construction of the contract which will impose upon the assured the burdens of a warranty, and will neither create nor extend a warranty by construction.

(3).  Even though a warranty, in name or form, be created by the terms of the contract, its effect may be modified by other parts of the policy, or of the application, including the questions and answers, so that the answers of the assured, so often merely categorical, will be construed not to be a warranty of immaterial facts, stated in such answers, but rather a warranty of the assured's honest belief in their truth—or, in other words, that they were stated in good faith.   The strong inclination of the courts is thus to make these statements, or answers, binding only so far as they are material to the risk, where this can be done without doing violence to the clear intention of the parties expressed in unequivocal and unqualified language to the contrary.

[Ala. Gold Life Ins. Co. v. Johnston.]

In support of these deductions we need not do more than refer to the following authorities : *Moulor v. American Life Ins. Co.*, 111 U. S. 335 ; *National Bank v. Insurance Co.*, 95 U. S. 673 ; *Price v. Phœnix Mut. Life Ins. Co.*, 10 Amer. Rep. 166 ; *supra*; *Southern Life Ins. Co. v. Booker*, (9 Heisk. 606), s. c. 24 Amer. Rep. 344 ; *Fitch v. The American, etc., Ins. Co.* (59 N. Y. 557), s. c. 17 Amer. Rep. 372 ; Bliss on Ins., § 24 ; *Campbell v. New England Mut. Life Ins. Co.*, 98 Mass. 381 ; *Fowler v. Ætna Fire Ins. Co.*, 16 Amer. Dec., note, pp. 463–466 ; *Piedmont, etc., Ins. Co. v. Young*, 58 Ala. 476 ; 2 Parsons on Contr. *465 *et seq.; Glendale Woolen Co. v. Protection Ins. Co.*, 54 Amer. Dec. 309, 320 ; *Wilkinson v. The Connecticut Mut. Life Ins. Co.* (30 Iowa 119), s. c., 6 Amer. Rep. 637 ; 1 Billups on Ins., § 638 ; Angell on Fire & Life Ins. Co., §§ 147, 147a.

Many early adjudications may be found, and not a few recent ones also, in which contracts of insurance, and especially of life insurance, have been construed in such a manner as to operate with great harshness and injustice to policy holders, who, acting with all proper prudence, as remarked by Lord St. Leonards, in the case of *Anderson v. Fitzgerald*, 4 H. L. C. 507, (s. c., 24 Eng. L. & Eq. 1), had been "led to suppose that they had made a provision for their families by an insurance on their lives, when, in point of fact, the policy was not worth the paper on which it is written." The rapid growth of the business of life insurance in the past quarter of a century, with the tendency of insurers to exact increasingly rigid and technical conditions, and the evils resulting from an abuse of the whole system, justify, if they do not necessitate, a departure from the rigidity of our earlier jurisprudence on this subject of warranties. And such, as we have said, is the tendency of the more modern authorities.

There are, it is true, in this case, some expressions in both the policy and the application, (which, taken together, constitute the contract of insurance), that indicate an intention to make all statements by the assured absolute warranties. The application, consisting of a "proposal" and a "declaration," is declared to "form the basis of the contract" of insurance, and the policy is asserted to have been issued "on the faith" of the application. It is further provided, that if the declaration, or any part of it, made by the assured, shall be found "in any respect untrue," or "any untrue or fraudulent answers" are made to the questions propounded, or facts suppressed, the policy shall be vitiated, and all payments of premiums made thereon shall be forfeited. So, if there were nothing in the contract to rebut the implication, it might perhaps be held that the parties had made each answer of the assured material

[Ala. Gold Life Ins. Co. v. Johnston.]

to the risk by the mere fact of propounding the questions to which such answers were made, and that this precluded all inquiry into the question of materiality.—*Price v. Phœnix Mut. Life Ins. Co.*, 10 Amer. Rep. 166, *supra.*

On the contrary, the policy purports to be issued "in consideration of the *representations*" made in the application, and of the annual premiums. The answers are no where expressly declared to be warranties, nor is the application, in so many words, made a part of the contract, so as to clearly import the answers into the terms and conditions of the. policy. Among numerous other questions, the assured was asked whether he had been affected since childhood with any one of an enumerated list of complaints or diseases, including "fits or convulsions;" and whether he had "ever been seriously ill," or had been affected with "any serious disease." To each of these questions he answered "No." The concluding question is as follows: "32. Is the party aware that any *untrue* or *fraudulent* answers to the above queries, or *any suppression of the facts* in regard to the party's health will vitiate the policy, and forfeit all payments made thereon?" To this was given the answer, "Yes." It is significant, as observed in a recent case before the New York Court of Appeals, that the assured "is not asked whether he is aware that any unintentional mistake in answering any of the host of questions thrust at him, whether material to the risk or not, will be a breach of warranty, and vitiate his policy." *Fitch v. The American etc. Insurance Co.* (59 N. Y. 557), s. c., 17 Amer. Rep. 372, *supra.* Then follows a declaration that "the assured is now in good health, and does · ordinarily enjoy good health," and that in the proposal of insurance he "had not withheld any *material* circumstance or information touching the past or present state of health or habits of life" of the assured, with which the company "should be made acquainted."

One part of the contract thus tends to show an intention to constitute the answers warranties, while the other describes and treats them as representations. There is thus left ample room for construction. What is to be understood by "untrue" answers, or "any *suppression* of facts?" Can they have reference to any disease, with which the assured was alleged to have been afflicted, of which he knew nothing, and could not possibly have informed himself by the exercise of proper diligence? Are they intended as absolute warranties of the fact that he had never, since childhood, or during life, been afflicted with diseases of which neither he, nor the most skillful physician could have had any knowledge whatever? The case of *Moulor v. American Life Ins. Co.* III U. S. 335, is a direct and strong authority for the position that the word " untrue " in the above

[Ala. Gold Life Ins. Co. v. Johnston.]

connection, in its broader sense, means knowingly or designedly untrue, or recklessly so—that it is the opposite of sincere, honest, not fraudulent. As said in that case, it is reasonably clear that "what the company required of the applicant, as a condition precedent to any binding contract, was, that he would observe the utmost faith towards it, and make full, direct, and honest answers to all questions, without evasion or fraud, and without suppression, misrepresentation, or concealment of facts, with which the company ought to be made acquainted ; and that by doing so, and only by doing so, would be deemed to have made fair and true answers."

The case of *Southern Life Insurance Co. v. Booker* (9 Heisk. 606), s. c., 24 Amer. Rep. 344, sustained the same view. There the policy, as here, was conditioned to be avoided by "any untrue or fraudulent answer" to the questions in the application. The answers were not strictly true as to the birthplace, residence and occupation of the assured. It was held that none of these being material to the risk, they would be construed as representations, although expressly declared to be "the basis of the contract" of insurance. The court said : "It would seem to be gross injustice to allow this (meaning the avoidance of the policy and the forfeiture of all payments made under it), in a case where the insured has acted in the utmost good faith, and honestly disclosed every fact material to be known, because, merely by inadvertence or oversight, an error of fact has been inserted in his application—an error that is clearly immaterial, and that could not by possibility have affected the contract. It is true that the parties have a right," the court adds, "to make their own contract, and by its terms we must be governed ; but before a court could hold a policy void, and all premiums paid thereon forfeited, because statements of this character in the application turned out to be untrue, they should be fully satisfied that such terms were fully and distinctly agreed to by the parties." These views, in our judgment, announce the sounder and more just doctrine, and they meet with our approval, being supported by reason, as well as by the more recent decisions of this country, on the subject of life insurance.—3 Addison Contr. (Morgan's Ed.) § 1123 ; *Price v. Phœnix etc. Ins. Co.*, 10 Amer. Rep. 166, 174 ; *supra ; Fitch v. The American etc. Ins. Co.* 17 Amer. Rep. 372, *supra*.

So the declaration embodied in the application, would seem to indicate that it is the inadvertent suppression or statement only of *material* circumstances or information, with which the company should in good faith be made acquainted, that will vitiate the policy, and cause a forfeiture. It cannot be supposed that one who, for the purpose of procuring insurance,

alleges himself to be in good health, shall be understood as warranting himself to be in perfect and absolute health, for this is seldom, if ever, the fortune of any human being, and "we are all born," as said by Lord Mansfield in *Willis v. Poole*, Park. Ins. 555, "with the seeds of mortality in us." These inquiries as to symptoms of diseases, as said by Mr. Parsons, therefore must mean, whether they "have ever appeared in such a way, or under such circumstances, as to indicate a disease which would have a tendency to shorten life," and he adds, "it is with this meaning the question is left to the jury."—2 Parsons Contr. *468, 471 ; 3 Addison Contr. (Morgan's ed.), § 1233. It has accordingly been held in an Englsh case, cited and approved both by Mr. Parsons and Mr. Addison, that even a warranty that the party, whose life is insured, "has not been afflicted with, nor is subject to vertigo, fits, etc.," would not be falsified by having had one fit. To forfeit the policy on this ground he must have been habitually or constitutionally afflicted with fits. Even then, adds Mr. Parsons, "we apprehend the materiality of the fact would be taken into consideration ; that is, for example, the policy would not be defeated by proof that the life insured, long years before, and when a teething child, had a fit."—2 Parsons Contr. *471–472 ; *Insurance Co. v. Wilkinson*, 13 Wall; 222.

There is nothing decided in *Alabama Gold Life Ins. Co. v. Garner*, 77 Ala. 210, or in *Alabama Gold Life Ins. Co. v. Thomas*, 74 Ala. 578, which conflicts with the foregoing views. The cases of *Jeffries v. Life Ins. Co.* 22 Wall. 47, and *Ætna Life Ins. Co. v. France Ins. Co.*, 91 U. S. 410, are distinguished, if not modified, in the later case of *Moulor v. Amer. Life Ins. Co.*, 111 U. S. 342, *supra*.

Our conclusion is that the following is a just and fair construction of the contract of insurance under consideration :

(1). That the answers of the assured were not absolute warranties, but in the nature of representations ; or if warranties, they are so modified by other parts of the contract as to be warranties only of an honest belief of their truth.

(2). That any untrue statement or suppression of fact, *material* to the risk assured, will vitiate the policy, and thus bar a recovery, whether intentional, or within the knowledge of the assured, or not.

(3). If *immaterial*, such statement, to avoid the policy, must have been untrue within the knowledge of the assured—that is, he must either have known it, or have been negligently ignorant of it.

(4). The terms of the contract rebut the implication that all symptoms of diseases inquired about were intended to be made absolutely material, unless they had once existed in such appre-

[Boyett & Wimberly v. Potter.]

ciable form as would affect soundness of health, or have a tendency to shorten life, and thus affect the risk.

It is very obvious that the rulings of the Circuit Court conformed to these principles, and, for this reason, we are of opinion that they are free from error. The evidence was sufficiently conflicting in its tendencies to justify the refusal to give the general charge requested by the defendant. The judgment is therefore affirmed.