PELICAN, RESPONDENT, *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, APPELLANT.

(No. 3,029.)

(Submitted November 23, 1911.   Decided December 8, 1911.)

[119 Pac. 778.]

*Life Insurance—Issues—Burden of Proof—Warranties—Representations—Fraud—Policy—Rule of Interpretation—Evidence —Review—Cross-examination—Instructions.*

Life Insurance—Issues—Burden of Proof
    1.   An application for a life insurance policy provided that the contract of insurance should not become effective unless the first premium had been paid and the policy issued during the insured's continuance in good health.   It was admitted that the first premium had been paid and retained, and a copy of the application attached to the policy recited that a binding receipt had been issued by defendant's agent on completion of the medical examination.   *Held,* that plaintiff, in order to establish a *prima facie* case, was not required to prove that insured was in good health at the time the policy was issued, the burden of proving that the policy was delivered when insured was not in good health being on the defendant.

Same—Improper Cross-examination.
    2.   Cross-examination of plaintiff as to a matter which properly appertained to defendant's affirmative defense, and with respect to which the former had not given any testimony, was properly excluded.

Same—Warranties—What Constitutes.
    3.   To constitute statements, contained in an application for life insurance, warranties, they must be made part of the contract by express agreement of the parties upon the face of the policy; being in the nature of conditions precedent, they must be strictly complied with, though not actually material to the risk.

Same—Representations—Effect.

4. A representation, not being of the essence of a contract of insurance, but rather in the nature of an inducement to it, will, though false, not operate to avoid the policy, unless it relates to a fact actually material, or clearly intended to be made so by agreement of the parties.

Same—Representations—Fraud.

5. Where questions put to an applicant for life insurance call for information founded upon his knowledge and belief, a misstatement or omission to answer will not avoid the policy, unless the answer is made knowingly and willfully with intent to deceive.

Same—Policies—Uncertainty—Rule of Interpretation.

6. Under the rule of construction applicable to contracts generally, that where after resort to all other rules there still remains any uncertainty as to the intention of the parties, the language must be interpreted most strongly against the party who caused the uncertainty to exist, *held* that answers to questions in an application for life insurance as to the prior health of the applicant were representations and not warranties.

Same—Concealment—Fraud—Jury Question.

7. Whether an applicant for life insurance intentionally concealed facts which are material, or made false representations with reference to them, intending to deceive the insurer, thus being guilty of actual fraud, was a question of fact for the jury.

Same—Conflicting Evidence—Directed Verdict—Proper Refusal.

8. Evidence reviewed and *held* to have been so conflicting as to leave in doubt the truth of the answers made by an applicant for life insurance, relative to the condition of his health, who died about nine months after receipt of policy of acute pulmonary tuberculosis, hence the court properly refused to take the cause from the jury.

Same—Instructions—Failure of Counsel to Request.

9. Where counsel for appellant at the time of settlement of the instructions failed to submit an instruction embodying a definition of a certain term, they may not complain on appeal that an instruction defining such term was not given.

Same—Appeal—Error—Who may not Complain.

10. Appellant will not be heard to complain of an error in instructions made in his favor.

Same—Instructions—Verdict—When not Contrary to Law.

11. Where a case was not submitted to the jury upon any definite theory, but the instructions were formulated in accordance with the theories of opposing counsel, and the evidence was such that the jury might have resolved the issues either way, the verdict for plaintiff was not contrary to the instructions, and therefore not against law.

Same—Opinion Evidence—Conclusion of Witness.

12. Upon the issue whether certain treatment constituted a surgical operation, physicians were improperly permitted to state their opinions that such was the case; their statements should have been limited to a recital of what was done.

Same—Evidence—Appellant may not Complain, When.

13. Evidence admitted to sustain appellant's theory of the case and deemed competent by him at the time of trial may not be complained of on appeal as erroneously admitted.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

Action by Jennie Pelican against the Mutual Life Insurance Company of New York. Judgment for plaintiff, and defendant appeals from the judgment and an order denying it a new trial. Affirmed.

## Statement of the Case by the Justice Delivering the Opinion.

Action on a policy of insurance. The Mutual Life Insurance Company of New York, the defendant, on October 9, 1908, issued to Henry Pelican, in Butte, Montana, a policy of insurance on his life for $1,000, designating the plaintiff herein, his surviving wife, the beneficiary; the consideration being the payment of an annual premium of $25.24. One of the conditions of the policy was the following: "This policy and the application therefor, a copy of which is indorsed hereon or attached hereto, constitute the entire contract between the parties hereto. All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and no such statement of the insured shall avoid or be used in defense to a claim under this policy unless contained in the written application herefor, copy of which is indorsed hereon or attached hereto."

The application contains this recital: "This application is made to the Mutual Life Insurance Company of New York. All the following statements and answers, and all those that I make to the company's medical examiner, in continuation of this application, are true, and are offered to the company as an inducement to issue the proposed policy, which I hereby agree to accept and which shall not take effect unless and until the first premium shall have been paid, during my continuance in good health, and unless also the policy shall have been issued during my continuance in good health; except in case a binding receipt shall have been issued as hereinafter provided."

During the course of his examination, Pelican was questioned as to the condition of his health then and theretofore. The questions and answers thereto were, among others, the following, omitting immaterial matters:

"Q. 3 (a). What illnesses, diseases, or accidents have you had since childhood? A. Name of disease: Influenza. Number of attacks: One. Date of each: Aug. 26, '08. Duration: Two weeks. Severity: Moderate.

"Q. 3 (b). Have you stated in answer to question 3 (a) all such illnesses, diseases, or accidents? A. Yes.

"Q. 4. State every physician whom you have consulted in the past five years. A. Name of Physician: Dr. Matthews. Address: Butte, Mont. When consulted: Aug. 26, '08. Nature of complaint: Give full details above under Q. 3 (a). A. Influenza as above. * * *

"Q. 6 (a). Are you now in good health? A. Yes. * * *

"Q. 8. Have you undergone a surgical operation? A. No. * * *

"Q. 12 (a). Have you gained or lost weight in the past year? A. No. * * *

"Q. 19 (a). Has any member of your household suffered from tuberculosis or consumption during the past year? A. No."

The complaint is in the ordinary form, alleging the execution and delivery of the policy upon payment of the stipulated premium, the death of the assured on July 29, 1909, the furnishing of due proof to the defendant, and its refusal to pay the amount stipulated for in the policy, or any part thereof. The defendant admits, substantially, all the allegations of the complaint. It then alleges as an affirmative defense that, when Pelican made application for the policy, he was examined by defendant's medical examiner; that his answers to the several questions quoted in the foregoing statement and incorporated in the application were wholly untrue; that they were known to him to be untrue; that defendant believed them to be true and relied upon the truth of them; that it would not otherwise have accepted the application or issued the policy; and that, because of said untrue statements and misrepresentations so made, the policy never became binding as a contract of insurance. Upon these allegations there was issue by reply. The jury found a verdict for the plaintiff for the full amount of the

policy, with interest from December 17, 1910. From the judgment entered thereon, and from an order denying its motion for a new trial, the defendant has appealed.

*Messrs. H. G. & S. H. McIntire,* and *Messrs. Mattison & Cavanaugh,* for Appellant, submitted a brief; *Mr. S. H. McIntire* argued the cause orally.

It was error to sustain the objection to the proof of death of Henry Pelican, offered in evidence by the defendant. The autopsy upon the body of Henry Pelican showed that ''the cause of death was exhaustion from pulmonary tuberculosis.'' The proof of death was furnished to the defendant company by Mrs. Pelican, and its contents were admissions against interest of material facts. ''Representations as to the cause of death of the insured, contained in proofs of death furnished by the beneficiary of a life insurance policy to the company, operate as admissions of a material fact against interest, and, while not conclusive, are competent *prima facie* evidence against the beneficiary upon an issue as to the cause of death raised in an action upon the policy.'' (Abbott's Trial Evidence, 619; *Insurance Co.* v. *Newton,* 22 Wall. (U. S.) 32, 22 L. Ed. 793; *Hanna* v. *Insurance Co.,* 150 N. Y. 526, 44 N. E. 1099; *Beard* v. *Roy. Neighbors,* 53 Or. 102, 99 Pac. 83, 19 L. R. A., n. s., 798, 17 Ann. Cas. 1199.) A representation made by one party for the purpose of influencing the conduct of another, and acted on by him, will, in general, be sufficient to entitle him to the assistance of a court of equity. Such representations in a policy of insurance are held to be warranties. (Sec. 5610, Rev. Codes; see, also, *Collins* v. *Metropolitan Life Ins. Co.,* 32 Mont. 329, 108 Am. St. Rep. 578, 80 Pac. 609, 1092; *Sullivan* v. *Metropolitan Life Ins. Co.,* 35 Mont. 1, 88 Pac. 401; Vance on Insurance, p. 267; *New York Life Ins. Co.* v. *Fletcher,* 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934; *Armour* v. *Insurance Co.,* 90 N. Y. 450; *Priestly* v. *Savings Co.,* 112 Fed. 271.) Statements made by the insured as an inducement to the procurement of a policy are warranties, and if false in any respect, material or immaterial, the policy is avoided.

(*Insurance Co.* v. *Sale*, 121 Fed. 664, 57 C. C. A. 418, 61 L. R. A. 337; *Doll* v. *Insurance Co.*, 138 Fed. 705, 71 C. C. A. 121; *Cobb* v. *Covenant etc. Association*, 153 Mass. 176, 25 Am. St. Rep. 619, 26 N. E. 230, 10 L. R. A. 666; *Jeffrics* v. *Insurance Co.*, 22 Wall. (U. S.) 47, 22 L. Ed. 833; *Insurance Co.* v. *France*, 91 U. S. 510, 23 L. Ed. 401.) Warranties must be literally and exactly fulfilled. (2 Current Law, 506.) Good faith or belief is not an excuse; truth only is involved. (2 Current Law, 506, and cases cited.) A warranty, in insurance, is a part of the contract evidenced by the policy, and a binding agreement that the facts stated are strictly true. (*Price* v. *Insurance Co.*, 17 Minn. 497, 10 Am. Rep. 166; *Insurance Co.* v. *Brown* (Tex. Civ. App.), 34 S. W. 462.) A warranty, in a policy of insurance, is a condition of contingency, and unless that be performed there is no contract. (*Assurance Co.* v. *Redding*, 68 Fed. 708, 15 C. C. A. 619.) And it must be strictly complied with, whether material or not. (*Insurance Co.* v. *West*, 76 Va. 575, 44 Am. Rep. 177.) It is immaterial for what purpose a warranty is introduced; but, being inserted, the contract does not exist, unless it is literally complied with. In contracts of insurance a warranty is regarded as very much like a condition precedent, which, if violated, voids the policy, and no recovery can thereafter be had thereon. (*Mead* v. *Insurance Co.*, 7 N. Y. 530; *Duncan* v. *Insurance Co.*, 6 Wend. (N. Y.) 488, 22 Am. Dec. 539.) It is not necessary that the fact or act warranted should be material to the risk, for the parties by their agreement have made it so. (*Assurance Society* v. *Reutlinger*, 58 Ark. 528, 25 S. W. 835; *Woodmen* v. *Prater* (Okl.), 103 Pac. 558.)

The court should have defined the term "surgical operation," to the jury (*Collins* v. *Insurance Co.*, *supra*), and reference should be had to standard dictionaries for the meaning of words. (*In re Klein's Estate*, 35 Mont. 205, 88 Pac. 798; Rev. Codes, secs. 5033, 7888.) "When the terms and language of a contract are ascertained, its meaning and intent present questions of law only, and it is the duty of the court, and not of the jury, to declare and determine what it is." (*Dwight* v. *Ger-*

*mania Life Ins. Co.,* 103 N. Y. 341, 57 Am. Rep. 727, 8 N. E. 654.)

*Mr. M. F. Canning* submitted a brief in behalf of Respondent, and argued the cause orally.

Assuming, without admitting, however, that the statements of the applicant Pelican, contained in the policy of insurance, were warranties, can the position of counsel be sustained on the facts in evidence? We think not. "Where a plain breach of warranty in an application for life insurance has been proved, and no waiver shown, it is proper to direct a verdict for the defendant. But if the evidence is conflicting, a verdict for the defendant should not be directed." (3 Cooley's Brief on Insurance, 1978, citing: *Moulor* v. *American Life Ins. Co.,* 101 U. S. 708, 25 L. Ed. 1077; *Henn* v. *Metropolitan Life Ins. Co.,* 67 N. J. L. 310, 51 Atl. 689; *Standard Life Ins. Co.* v. *Sale,* 121 Fed. 664, 67 C. C. A. 418, 61 L. R. A. 337.)

As to the use of the term "surgical operation": This question, as it stands in the application for insurance, is No. 8, and is as follows: "Have you undergone a surgical operation?" It is immediately followed by question No. 9 a: "Have you lost any part of an arm or leg?" Both of which were answered by the applicant in the negative. In the case of *N. Y. Life Ins. Co.* v. *Baker,* 83 Fed. 647, 27 C. C. A. 658, two analogous questions were similarly answered by the applicant, and it was held that he did not perpetrate fraud by so answering. The court says: "In view of the juxtaposition of these questions, it would be very natural for anyone to infer that by the term 'illness' as used in both questions, some serious illness was intended." In another case, the setting of a broken leg was not regarded by the court as a surgical operation. (*Caruthers* v. *Kansas Mut. Life Ins. Co.,* 108 Fed. 487.) "Where medical men disagree as to the meaning of the term, it is held to be ambiguous." (*Mutual Benefit Life Ins. Co.* v. *Robison,* 58 Fed. 723, 7 C. C. A. 444, 22 L. R. A. 325.) At the time of his examination, Pelican told the medical examiner all about his illness, its extent, its dura-

tion, and the name of his attending physician, so that there could not possibly be any concealment, fraud, or deceit.

The question of the applicant's health at the time of entering into the contract: "The court was clearly right in refusing to direct a verdict for the defendant on the ground that the uncontradicted evidence showed that Schardt had had syphilis when he denied it in his answers. The evidence left it a controverted issue of fact whether Schardt had suffered from this disease and the question of his having had it, and of its materiality were both for the jury." (*Pennsylvania Mutual Life Ins Co.* v. *Mechanics' Sav. Bank & Trust Co.*, 37 U. S. App. 692, 72 Fed. 413, 19 C. C. A. 286, 43 U. S. App. 75, 73 Fed. 653, 19 C. C. A. 316, 38 L. R. A. 33; *Standard L. & A. Ins. Co.* v. *Sale, supra.*) "The applicant may not know enough about the human system to be aware of the existence of some disease affecting a vital organ, and in such case it cannot be considered that the applicant has warranted himself to be free from disease. The knowledge of the applicant is a determining factor in the consideration of the truth or falsity of his answer." (*Horn* v. *Amicable Life Ins. Co.*, 64 Barb. (N. Y.) 81.) "The question of the applicant's sound health at the time of the issuance of the policy was for the jury upon conflicting evidence." (*Smith* v. *Metropolitan Life Ins. Co.*, 183 Pa. 504, 38 Atl. 1038.) "The medical advisers of the company are far better able to detect incipient diseases than the subject." (*Horn* v. *Insurance Co., supra.*) As to the existence of consumption in the applicant, see 3 Cooley's Briefs on Insurance, 2121. And as to what are questions for the jury on the matter of good health of the applicant, see *Id.*, p. 2144 *et seq.*

A verdict against an insurance company will not be set aside where there is competent evidence to sustain it, though the evidence may be conflicting. (*Aetna Life Ins. Co.* v. *Rehlander,* 68 Neb. 284, 94 N. W. 129, 4 Ann. Cas. 251; *Mutual Reserve Fund Life Assn.* v. *Powell,* 79 Ill. App. 482; *Jeffery* v. *United Order Golden Cross,* 97 Me. 176, 53 Atl. 1102.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

1. Plaintiff, being sworn, testified that she was the surviving wife of Henry Pelican, the beneficiary named in the policy, and that no part of the sum stipulated for therein had been paid. Her counsel then introduced the policy and rested. Thereupon counsel for defendant moved for a nonsuit on the ground that plaintiff had failed to show that Pelican was in good health at the time the policy was delivered. The motion was overruled. Defendant assigns error. Counsel argue that, since in the application Pelican agreed that the contract should not become effective unless the first premium was paid and the policy was issued during his "continuance in good health," it had not become a binding contract in the absence of evidence showing that he was in good health at the date of its issuance. The ruling was proper. It stood admitted by the answer that the [1] first premium had been paid and retained by the defendant. Under this condition of the case, the plaintiff was entitled to judgment, in the absence of evidence tending to establish the fraud upon which alone the defendant relied to avoid the contract. Therefore the burden was upon the defendant. (Revised Codes, sec. 7972.) Furthermore, if any evidence had been necessary to make out a *prima facie* case, the application, a copy of which was attached to the policy, recites that the binding receipt had been given by the solicitor of the defendant upon a completion of the medical examination.

2. During the cross-examination of the plaintiff, counsel for defendant had her identify the papers containing the proof of death furnished by her to defendant, and then offered them in evidence for the purpose of showing the cause of the death. They were excluded. There was no issue in the pleadings as to the cause of death. If material for any purpose, the evidence tended to show that, at the time the application was signed, Pelican was probably suffering from tuberculosis, and therefore that his statement that he was in good health was not true. [2] The inquiry in this regard appertained to defendant's

affirmative defense, and, since the plaintiff had not given testimony on this subject, it was not within the right of counsel to cross-examine her with reference to it. (*Borden* v. *Lynch,* 34 Mont. 503, 87 Pac. 609.)

3. The next contention is that the court erred in overruling defendant's motion for a directed verdict. Counsel's theory of the case is that the statements contained in the application touching the condition of Pelican's health were warranties, and that, since they were conclusively shown to be untrue, the result was that the policy was avoided. The assumption by counsel is erroneous.

The general rule is that a warranty must be a part and parcel of the contract—made so by express agreement of the parties [3] upon the face of the policy. It is in the nature of a condition precedent and must be strictly complied with or literally fulfilled, to entitle the assured to recover on the policy. It need not be actually material to the risk; its falsity will bar recovery because by the express stipulation the statement is warranted to be true, and thus is made material. (*Alabama Gold Life Ins. Co.* v. *Johnston,* 80 Ala. 467, 59 Am. Rep. 816, 2 South. 125; *Collins* v. *Metropolitan Life Ins. Co.,* 32 Mont. 329, 108 Am. St. Rep. 578, 80 Pac. 609, 1092.) "A representation is not, strictly speaking, a part of the contract of insurance, or of the essence of it, but rather something collateral or preliminary, and in the nature of an inducement to it. A false [4] representation, unlike a false warranty, will not operate to vitiate the contract, or avoid the policy, unless it relates to a fact actually material, or clearly intended to be made material by the agreement of the parties. It is sufficient if representations be substantially true. They need not be strictly or literally so. A misrepresentation renders the policy void on the ground of fraud, while a noncompliance with a warranty operates as an express breach of the contract." (*Alabama Gold Life Ins. Co.* v. *Johnston, supra.*) When, therefore, the statements are mere representations, the transaction becomes a matter of fair dealing on the part of the insured; and, if it appears from the application that the questions put to the ap-

plicant call for information founded upon his knowledge or belief, a misstatement or omission to answer will not avoid the [5]. policy, unless the answer is made knowingly and willfully with intent to deceive.    (*Globe Mutual Life Ins. Assn.* v. *March,* 118 Ill. App. 261; *Globe Mutual Life Ins. Assn.* v. *Wagner,* 188 Ill. 133, 80 Am. St. Rep. 169, 58 N. E. 970, 52 L. R. A. 649; *Moulor* v. *American Life Ins. Co.,* 111 U. S. 335, 4 Sup. Ct. 466, 28 L. Ed. 447; *Ames* v. *Manhattan Life Ins. Co.,* 40 App. Div. 465, 58 N. Y. Supp. 244; *Horn* v. *Amicable M. Life Ins. Co.,* 64 Barb. (N. Y.) 81; *Equitable Life Assur. Soc.* v. *McElroy,* 83 Fed. 631, 28 C. C. A. 365; *Caruthers* v. *Kansas Life Ins. Co.* (C. C.), 108 Fed. 487; *Henn* v. *Metropolitan Life Ins. Co.,* 67 N. J. L. 310, 51 Atl. 689; 25 Cyc. 800; 3 Cooley's Briefs on the Law of Insurance, 1956.)

It is true that in the application there is found the statement that the answers made to the medical examiner were true and were made to the company "as an inducement to issue the proposed policy."    Yet it appears, from the condition quoted above from the policy itself, that in the absence of fraud these statements were to be "deemed as representations and not warranties."    Of course, if they were warranties, they would bring this case within the rule stated in *Collins* v. *Metropolitan Life Ins. Co.* and *Alabama Gold Life Ins. Co.* v. *Johnston, supra,* [6]    which is recognized by the courts generally.    Here the policy was prepared by the defendant.    The language contained in it is its language.    The rule of construction applicable is that if, after resort to all other rules, there still remains any uncertainty as to the intention of the parties, the language of the contract must be interpreted most strongly against the party who caused the uncertainty to exist.    (Rev. Codes, sec. 5043; *Bickford* v. *Kirwin,* 30 Mont. 1, 75 Pac. 518; *Blankenship* v. *Decker,* 34 Mont. 292, 85 Pac. 1035.)    In this class of cases, the defendant, being the promisor, is presumed to be such party. While, under the provision of the policy referred to, we think it is clear that the intention was that the statements of Pelican were to be taken as representations and not warranties, yet, so far as this intention may be considered as involved in any

uncertainty, the doubt must be resolved in favor of the plaintiff.

Under the rule deducible from the authorities cited *supra,* the recital in the application in this case, in view of the condition stated in the policy, means nothing more than this: That upon the payment of the first premium it became a contract binding upon the defendant, unless the latter could show that it was induced to issue it by actual fraud practiced upon it by Pelican, in failing to answer fully and fairly each question propounded to him, according to his best information and belief. That this was the character of answers required is apparent from the nature of the questions propounded, dealing, as they did, so far as the condition of his health then was and theretofore had been, with matters about which a layman is not presumed to be acquainted. This being so, the burden was upon defendant to show, not only that the representations were untrue, but were made with the intent to conceal the condition of Pelican's health, and that defendant would not have issued the policy but for the fraud thus practiced upon it. "Each party to a contract of insurance must communicate to the other, in good faith, all the facts within his knowledge which are, or which he believes to be, material to the contract, and which the other has not the means of ascertaining, and as to which he makes no warranty." (Rev. Codes, sec. 5570.) Therefore, if the insured intentionally conceals facts which are material, or makes false representations with reference to them, intending to mislead the insurer, he is guilty of actual fraud, which, at the option of the latter, avoids the policy. Such a fraud, [7] however, is always a question of fact for the jury (Rev. Codes, sec. 4980), and, unless the condition of the evidence is such that only one inference may be drawn from it, the court may not direct a verdict. The inquiry is: First, as to the truth of the representations; second, if untrue, whether they were intended to mislead; third, whether the adverse party accepted them as true and acted upon them; and, fourth, was he prejudiced? (*Power & Bro.* v. *Turner,* 37 Mont. 521, 97 Pac.

950.)  The concealment of the material fact is equivalent to a false representation that it does not exist.  (*Id.*)

The evidence tends to show that Pelican died of pulmonary tuberculosis, attended by chronic pleurisy and chronic pleuro-pericarditis.  Two physicians, Drs. Horst and Anderson, who performed an autopsy upon the body, testified that the condition of the lungs and pleura bore evidence that the disease had been of long standing, and that they were of the opinion that such had been the case.  Both, however, stated that a person may contract tuberculosis and die of it within a few weeks, but expressed the opinion that in such case the disease would be acute in form and not attended by the chronic pleuritic condition found in the body of Pelican.  Dr. Matthews testified that he had been called to attend Pelican and visited him on the 10th, 11th and 12th of September, 1908, and perhaps on other occasions immediately prior to these days, but of which fact he had no record.  Pelican was then, according to his statement, in an emaciated condition, suffering from pulmonary tubercular pleurisy.  The witness was of the opinion at that time that Pelican would not thereafter be able to work at his occupation, that of a miner.  On September 12, the witness aspirated Pelican's chest, removing therefrom about two quarts of fluid.  The witness stated that this was a minor surgical operation.  Though he deemed the patient's condition serious, he did not disclose it to him or his family, further than to tell the plaintiff that he was a very sick man.  Subsequent to September 12, and prior to October 9, 1908, he treated the patient at his office and saw him in the office of another physician.  At this time he was emaciated, short of breath, and coughed badly.  Dr. Hammond, the defendant's examining physician, who had acted in that capacity for twenty-five years, stated that on the date of the application he made the examination of Pelican particularly with the purpose of ascertaining whether there were any indications of pulmonary tuberculosis, and found no trace of it whatsoever.  Dr. Sullivan testified that he visited Pelican once in the spring of 1909; that he made a thorough subjective and objective examination and found him suffering from influenza;

44 Mont.—19

that, though he made examination of Pelican's chest, he found none of the conditions testified to by Dr. Matthews as present in September, 1908; but that such conditions might have existed without the knowledge either of the attending physician or of the patient himself. The mother and sister of Pelican were present when Dr. Matthews aspirated Pelican's chest on September 12. Both stated that in reply to an inquiry by the plaintiff, as to the illness from which her husband was suffering, made in the hearing of her husband, Dr. Matthews informed her that it was influenza, but "did not amount to anything." The witness Snow, who accompanied the doctor on that visit, stated that Dr. Matthews fully informed Pelican as to the character of the disease. Dr. Matthews himself said, however, that he did not make any statement either to Pelican or to plaintiff as to the nature of the disease, and did not remember whether he told the plaintiff that it was influenza. He stated to plaintiff, he said, that the condition was serious, and that Pelican would probably not be able to work again. As to the treatment given by Dr. Matthews, Dr. Sullivan stated that he did not consider the use of the aspirating instrument a surgical operation, and that any physician could use it, its use requiring no special skill. The evidence as to the loss of weight by Pelican is very meager. He began to work in one of the mines in Butte in the spring of 1908. He ceased work on August 26 because of the illness for which he was treated by Dr. Matthews. He returned to work on October 5 and continued until October 22, when he again quit because he was not feeling well. The superintendent stated that he was not, upon his return to work in October, looking as stout as when he had quit in August, but that he did full work thereafter until he finally quit toward the end of the month. This statement, together with the testimony of Drs. Matthews and Hammond as to the prior and subsequent condition of his health, is all the evidence reflecting in any way upon the truth of his answer to the inquiry on this subject.

It will be observed from this summary that the evidence left in doubt the truth of the answers of Pelican to the several questions, as well as his good faith in making them. If he was

[8]   suffering from tuberculosis on September 12, 1908, and died in an advanced stage of the disease in July, 1909, the ordinary layman might suspect that he was afflicted with it at the date of his application.   Yet the testimony of Dr. Hammond tends to show that he was entirely free from it at that time, and the fact that the doctor found him insurable indicates that he was then in good health.   Therefore the truth or falsity of his answers to questions 3 (a), 3 (b), 4, 6 (a), 12 (a), and 19 (a), which all reflected upon the condition of his health, depended upon the proper inferences to be drawn from the evidence.   There was evidence tending to show that, when Dr. Matthews visited him, he informed him that he was suffering from influenza.   Even though he was then suffering from pleuritic tuberculosis, nevertheless, being a layman, he could not himself be expected to have a better knowledge of diseases or of the condition of his health, than had Dr. Hammond who about a month later made a careful examination to ascertain if the disease was present.   Hence, also, the inference of his good or bad faith in making these several answers was to be drawn from conflicting evidence. Whether he had in fact gained or lost weight during the past year depended upon the statement of the mine superintendent, which might or might not, in view of the condition of his health shown by the evidence of Dr. Hammond, on October 9, four days after he had returned to his usual employment, furnish a basis for the inference that his answer on this point was untrue.   With reference to the treatment given him by Dr. Matthews on September 12, since the doctors who testified differed as to whether it was a surgical operation, it is not surprising that he answered as he did.   We shall refer to this feature of the case again, when we come to consider the instructions.   At this time it is sufficient to say that, though the treatment may be conceded to have been a minor surgical operation, as stated by Dr. Matthews, the bad faith of Pelican in answering as he did was not, in view of the fact that he was a layman, a necessary inference.   It was peculiarly within the province of the jury to determine whether, upon the whole of the evidence as to any of his answers, Pelican was guilty of fraud within the

rule stated above. The apparent haste with which he proceeded to have his life insured after his illness in 1908, the short time that he was at work thereafter, and the condition of his body as described by the physicians who performed the autopsy, some nine months later, might well be regarded as sufficient to create a suspicion that his statements were intentionally untrue. Nevertheless, the court properly refused to take the case from the jury. (*Globe Insurance Co.* v. *Wagner, supra; Moulor* v. *Insurance Co.*, 101 U. S. 708, 25 L. Ed. 1077; *Smith* v. *Metropolitan Life Ins. Co.*, 183 Pa. 504, 38 Atl. 1038; *Alabama Gold Life Ins. Co.* v. *Johnston, supra; Henn* v. *Metropolitan Life Ins. Co., supra.*)

4. Error is assigned upon the refusal of the court to give several instructions requested by the defendant. Each of them was formulated upon the theory of counsel for defendant that the answers of Pelican quoted in the statement were warranties, and that the verdict should be for the defendant, if any of them were found to be untrue. Concerning the instructions given, it may be observed that some of them were formulated in accordance with the theory of counsel for defendant, while others proceeded upon the opposing theory. They were conflicting and inharmonious. The case was therefore not submitted to the jury upon any definite theory. No complaint is made of this fault. The instructions refused would, if given, have emphasized the conflicting theories embodied in the charge, and, since they were not correct statements of the law applicable to the issues presented by the pleadings and the evidence, they were properly refused.

Counsel for defendant requested the following instruction, which was refused: "You are further instructed that, in his said application for the policy of insurance sued on herein, said Pelican answered 'No' to the question, 'Have you undergone any surgical operation?' A 'surgical operation,' within the meaning of that term as used in said application of said Henry Pelican, is such an operation by means of the hands or use of instruments having for its object the cure of a local disease; so if you believe from the evidence that a surgical operation as

above defined was had upon the body of the said Henry Pelican to relieve him from the effects and to cure him of pleurisy, and that such operation was had within the period of one year before the ninth day of October, 1908, the date of said application, then your verdict should be for the defendant." The court, however, did give the following: "(11) You are further instructed that, in his said application for the policy of insurance sued on herein, said Henry Pelican answered 'No' to the question 'Have you undergone any surgical operation?' If you find from a preponderance of the evidence that the deceased underwent a surgical operation before making said application for insurance, then your verdict should be for the defendant." The expression "surgical operation" is not mentioned elsewhere in the instructions.

At the time of settlement, counsel for defendant reserved their exception to the refusal of their request, on the ground that, "there being a conflict in the evidence, as to the term 'surgical operation,' the court should have defined the term in its instructions to the jury." Error is assigned in this behalf. For present purposes it may be assumed that the definition embodied in the instruction was correct; yet, the instruction being as a whole erroneous, in that it assumed that the answers of Pelican were warranties and not representations, it was properly refused. The view of counsel evidently was that it was within the province of the jury to determine from the evidence as to what was done at the time and the opinions of Drs. Matthews and Sullivan, whether Dr. Matthews' treatment was a surgical operation within the recognized meaning of that expression, and that therefore a definition of it, as used in the application, should have been submitted. This view may have been correct upon the theory upon which the trial was had; but, even so, [9] counsel are not in position to complain, because they failed to prepare and submit an instruction embodying the definition and at the same time otherwise correct in point of law. In the instruction given, the court submitted the question to the jury as one of fact, without defining the meaning of the expression; but counsel did not object to it as given, and therefore cannot

now complain of the omission. Though the instruction is erroneous because it also omits any direction to the jury to find on the question of good faith on the part of Pelican in answering the particular question involved, and authorized a verdict for [10] defendant if the answer was found to be untrue, this is an infirmity from which the defendant suffered no prejudice because the error was in its favor.

5. The contention is made that the verdict is against law. As we have already pointed out, the instructions were inharmonious, in that some of them—as is true of instruction 11, *supra*—were not appropriate to the issues presented by the pleadings. Nevertheless, upon either theory of the case there was a conflict in [11] the evidence, and since the jury might have resolved the issues either way, the verdict is not contrary to the instructions, and is therefore not against law.

The opinions of the physicians upon the character of the treatment given Pelican by Dr. Matthews were not competent. [12] The witnesses should have been permitted to state the facts only as to what was done. And, since there was no controversy in the evidence in this connection, the court should have told the jury, as a matter of law, that the treatment was a surgical operation, and left it to them to determine Pelican's good faith. The theory of counsel for defendant was that these [13] opinions were competent evidence. This being so, and the case having been submitted to the jury upon counsel's own theory as to this feature of it, the defendant is not in position to complain.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.